**Frances DICKERSON,**
**Appellant/Cross-Appellee,**

v.

**DELUXE CHECK PRINTERS, INC.,**
**Appellee/Cross-Appellant.**

**Nos. 82–1202, 82–1217.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1982.
Decided March 25, 1983.

Michael J. Hoare, Chackes, Hoare & Sedey, St. Louis, Mo., for appellant/cross-appellee.

Lashly, Caruthers, Baer & Hamel, P.C., John H. Lashly, Richard D. Watters, St. Louis, Mo., for appellee/cross-appellant.

Before LAY, Chief Judge, and McMILLIAN and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Appellant Frances Dickerson was awarded $62,000 in damages by a jury and the court on her claim that Deluxe Check Printers, Inc., (Deluxe) denied her a job because of her age in violation of the Age Discrimination in Employment Act, (ADEA), 29 U.S.C. §§ 621 *et seq.* She challenges the district court's summary dismissal of her motion for additional, equitable relief in the form of employment in an appropriate position with Deluxe Check Printers and various retroactive employment benefits. Deluxe Check Printers cross-appeals, arguing that Dickerson's refusal of good faith offers of employment should have terminated the accrual of back pay damages, and contending that Dickerson failed to file a written charge of discrimination with the Department of Labor as required by 29 U.S.C. § 626(d). We affirm the award of damages, and remand the case to the district court to formulate an order compelling Dickerson's employment with Deluxe Check Printers, and to conduct a hearing on the additional equitable relief which Dickerson has requested.

Deluxe Check Printers, Inc., is in the business of printing and selling checks, deposit slips and related items for use by banks and their customers. Deluxe has entry level positions in both the factory and the cafeteria. Frances Dickerson, then 47 years old, applied for an entry-level job with Deluxe on May 26, 1978, and was told there were no openings. Dickerson subsequently heard that Deluxe had hired a number of younger people during the summer of 1978 and she concluded that she had not

been offered a job because of her age. Dickerson called the Department of Labor on August 23, 1978, and reported her claims of discrimination. A Department employee wrote down the information given by Dickerson. On September 15, 1978, a second Department employee visited Dickerson's home to interview her. The Department employee completed an "Employee Personal Interview Statement" containing Dickerson's allegations of discrimination against Deluxe. Dickerson signed the statement and returned it to the Department of Labor employee. Subsequently, the Department began efforts to conciliate Dickerson's complaint against Deluxe as required by 29 U.S.C. §§ 621 et seq.

Dickerson informed Deluxe that she had filed an age-discrimination claim against them with the Department of Labor and in response Deluxe set up an appointment to interview Dickerson for a job on September 26, 1978. Although this point was in dispute, Dickerson apparently informed Deluxe's representative at this interview that she was not interested in cafeteria work, in which she had no experience.

On or about October 4, 1978, a representative of Deluxe discussed with Dickerson the possibility of a job in the cafeteria. Dickerson indicated she was not interested in such a position. Subsequently on or about November 17, 1978, Dickerson heard of a "split duty" job with Deluxe. Dickerson understood that the "split duty" job consisted of five hours per day in the bindery and three hours per day in the cafeteria, and she testified that Gloria Baum of Deluxe's personnel department verified these hours. Dickerson indicated to Baum that she was interested in the job. When Dickerson formally interviewed for the job,

however, she was told that the "split" in fact involved only three hours per day in the bindery and five hours per day in the cafeteria. Dickerson indicated that she was not interested in the position under these circumstances.

The Department of Labor concluded its conciliation efforts in November 1978 and notified Dickerson of her right to sue Deluxe. Dickerson then instituted the present action in district court.

Dickerson's case was tried to a jury. The jury found that Deluxe had willfully violated the ADEA, and awarded Dickerson $31,000 in actual damages. The district court[1] thereafter awarded Dickerson an additional $31,000 in liquidated damages pursuant to 29 U.S.C. § 216(b). Citing "the large damage award that the plaintiff has received and the other evidence in this case" the district court denied Dickerson's request for equitable relief without holding an additional hearing on the equitable issues.

## I. Denial of Equitable Relief

Dickerson contends that the district court improperly refused to grant her the equitable relief she requested, and argues that the court should have conducted a separate hearing before ruling on her request for equitable relief.[2]

To the extent possible, a district court should seek "to make persons whole for injuries suffered on account of unlawful employment discrimination," *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280, 297 (1975), and should attempt to carry out "the ADEA's purpose of recreating the circumstances that would have existed but for the illegal discrimination." *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1097 (8th Cir.1982). Al-

---

1. The Hon. John F. Nangle, United States District Judge for the Eastern District of Missouri.

2. Deluxe argues that the pension and profit sharing benefits question is a legal issue which should have been presented to the jury. We disagree with Deluxe's characterization of this issue. We have previously treated such benefits as falling in the category of equitable relief. *See: Gibson v. Mohawk Rubber Co.,* 695 F.2d at 1100; *Cleverly v. Western Electric Co.,* 594

F.2d 638, 640 (8th Cir.1979). *Accord: Geller v. Markham,* 635 F.2d 1027, 1036 (2d Cir.1980), *cert. denied* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). A characterization of these benefits as equitable issues is particularly appropriate where plaintiff is seeking pension and profit sharing benefit status as part of her request for employment with defendant. *See: Quinn v. Bowmar Publishing Co.,* 445 F.Supp. 780, 789 (D.Md.1978).

though a district court is "vested with discretion to decide whether to award equitable relief", *Id.* at 1100, the court may refuse equitable relief, including compelling employment of plaintiff, " 'only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.' " *Taylor v. Teletype Corp.*, 648 F.2d 1129, 1138 (8th Cir.), *cert. denied* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981), quoting from *Albemarle Paper Co. v. Moody*, 422 U.S. at 421, 95 S.Ct. at 2373, 45 L.Ed.2d at 299. Accordingly, a district court must "carefully articulate" its rationale for refusing to compel employment of a plaintiff who has suffered discrimination. 422 U.S. at 421, 95 S.Ct. at 2373, 45 L.Ed.2d at 299, n. 14.

■ We conclude that the district court erred in denying Dickerson equitable relief. The court failed to articulate sufficient reasons for refusing such relief. The court did not specify "the other evidence in this case" which supported its decision. The "large damage award" is also an insufficient basis for the denial of equitable relief. The $31,000 verdict awarded by the jury compensated Dickerson only for the back wages she had been denied from July 1978 to the time of trial. The additional $31,000 awarded by the trial court constituted liquidated damages pursuant to 29 U.S.C. § 216(b). As we said in *Gibson v. Mohawk Rubber Co.*, 695 F.2d at 1102, "liquidated damages under the ADEA ... are intended to provide compensation for losses that cannot be calculated with certainty," such as loss of the use of back wages wrongfully denied. The underlying purpose of liquidated damages is to "compensate the aggrieved party for nonpecuniary losses arising out of a willful violation of the ADEA." H.Conf.Rep. No. 95–950, 95th Cong., 2d Sess. 13, *reprinted in* 1978 U.S. Code Cong. & Ad.News at 504, 535. As these statements indicate, liquidated damages are not intended to take the place of equitable relief.

Our review of the record does not reveal evidence which would support the district court's refusal to compel Dickerson's employment with Deluxe. "[I]n the absence of exceptional circumstances ..., the jury's verdict in favor of plaintiff on the issue of age discrimination is *res judicata* for the purposes of the equitable claim for reinstatement." *Cleverly v. Western Electric Co.*, 450 F.Supp. 507, 511 (W.D.Mo.1978), *aff'd* 594 F.2d 638 (8th Cir.1979). *Accord: Gibson v. Mohawk Rubber Co., supra.* Although this case involves a request for placement in a job which appellant has been denied, rather than reinstatement to a job previously held, the same principles must be applied. The provision for equitable relief in ADEA cases is intended to effect the central statutory purpose of eradicating discrimination. Often the only way this purpose can be effected is by compelling employment.

■ Those cases in which courts have declined to reinstate injured plaintiffs have frequently involved high level, unique or unusually sensitive positions in defendant's organization. *See, e.g.: Combes v. Griffin Television, Inc.*, 421 F.Supp. 841, 846 (W.D. Okl.1976) (plaintiff had formerly held the job of news anchorman with defendant television station, a position which involved a unique relationship with other employees, and the court found that "[d]iscord, tension, suspicion, antagonism and sensitivity among them would be productive of a very difficult employment environment, with the particular difficulty of being perceivable to the viewing audience"); *EEOC v. Kallir, Philips, Ross, Inc.*, 420 F.Supp. 919, 926–27 (S.D.N.Y.1976), *aff'd. mem.* 559 F.2d 1203 (2d Cir.), *cert. denied*, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977) (plaintiff's former job "required a close working relationship [with] top executives of defendant" and "involved frequent personal contact with defendant's clients, with plaintiff acting as defendant's representative"). There are no such barriers to employment in this case. Dickerson applied for an entry level position in Deluxe's plant, and the positions she is interested in are neither unique nor

sensitive. It is in just such a case as this that compelling employment is particularly appropriate to effectuate ADEA's goal of eradicating age discrimination.

■ Courts have also declined to reinstate plaintiffs because of evidence of extreme animosity between plaintiffs and defendant employers. In *Cancellier v. Federated Department Stores*, 672 F.2d 1312 (9th Cir.), *cert. denied* —— U.S. ——, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982), the Ninth Circuit upheld the denial of reinstatement to three former I. Magnin employees discharged because of their age. The plaintiffs had held the positions of vice president for stores and operations, divisional merchandise manager for accessories, and buyer. The trial judge had refused reinstatement of plaintiffs because he found that their large damage award, which included a substantial amount of punitive damages on a separate tort claim, had made them whole, and because "I. Magnin's numerous attacks ... on plaintiffs' abilities" had convinced him that "plaintiffs and I. Magnin could no longer 'co-exist in a business relationship that would be productive to the consumer, community or to the business itself.'" *Id.* at 1319–20. *See also: Hoffman v. Nissan Motor Corp.*, 511 F.Supp. 352, 355 (D.N.H.1981) (court concluded that reinstatement of plaintiff "would be a harbinger of disaster.") In this case there was no evidence of unusual acrimony between Dickerson and Deluxe. The friction arising from the litigation process itself is not alone sufficient to deny employment since "a court might deny [employment] in virtually every case if it considered the hostility engendered from litigation as a bar to relief." *Taylor v. Teletype Corp.*, 648 F.2d at 1139.

Courts have upheld compelled re-employment in a number of cases. *See, e.g.: Taylor v. Teletype, supra; Harper v. General Grocers Co.*, 590 F.2d 713 (8th Cir.1979) (reinstatement of Title VII plaintiff upheld, and retroactive seniority awarded); *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109 (4th

Cir.), *cert. denied* 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981) (reinstatement of ADEA plaintiff upheld where there had been no showing that plaintiff was unqualified for the job or that he was incompatible with defendants); *Cline v. Roadway Express, Inc.*, 689 F.2d 481 (4th Cir.1982) (reinstatement of ADEA plaintiff upheld even though employer contended that plaintiff was not able to get along with other personnel and that plaintiff's long absence from the trucking industry would prevent him from being an effective employee).

This case will be remanded with directions to enter an order compelling Deluxe Check Printers to employ Frances Dickerson in a position in the plant at Deluxe's St. Louis County facility. On remand a hearing will be necessary on Dickerson's requests for additional equitable relief in the form of retroactive pension and profit sharing benefits, "red circling", additional back-pay which has accrued since the trial of her case, and other appropriate equitable relief. Since these are equitable issues, no evidence was presented on these questions during the jury trial.

## II. Issues on Cross Appeal

On cross-appeal Deluxe raises two issues. Deluxe first contends that Dickerson was improperly allowed to introduce evidence of damages which accrued after she rejected Deluxe's offers of employment. Defendant contends that in October 1978 Dickerson was offered a full time job in the cafeteria and that in November 1978 she was offered a job consisting of three hours per day in the bindery and five hours per day in the cafeteria.

Dickerson contends that no job offers were made to her. Our review of the record reveals that the evidence was conflicting on this question, and we cannot conclude as a matter of law that any offers of employment were made to Dickerson. The uncertainties in the evidence were for the jury to resolve.[3]

---

**3.** Deluxe argues that Dickerson's closing argument to the jury and Dickerson's pretrial brief contain admissions that she received job offers.

Our review of the record convinces us that the brief and argument contain no such admissions. Deluxe also argues that the Department

■ Even if it were established that Deluxe did offer Dickerson these two jobs, however, it is not clear that her refusal would have stopped the accrual of damages. An offer of employment with a defendant who has previously refused to hire plaintiff, like an offer of reinstatement to a job previously held, will not necessarily terminate an employee's right to relief. " 'In determining whether the right to relief extends beyond the date of an offer of reinstatement, the trial court must consider the circumstances under which the offer was made or rejected, including the terms of the offer and the reasons for refusal.' " *Taylor v. Teletype Corp.,* 648 F.2d at 1138–39, quoting from *Claiborne v. Illinois Central Railroad,* 583 F.2d 143, 153 (5th Cir.1978), *cert. denied* 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979).

In *Fiedler v. Indianhead Truck Line,* 670 F.2d 806, 808 (8th Cir.1982), we reiterated that "[g]enerally, it is the duty of the trier of fact to weigh the evidence to determine whether a reasonable person would refuse the offer of reinstatement." It is apparent that the jury did so weigh the evidence, and concluded that Dickerson did not unreasonably reject any offers of employment from defendant. The jury had been instructed that they "must end any award of back-pay as of the date of plaintiff's unreasonable rejection" of a good faith offer of employment made by defendant,[4] but nevertheless awarded Dickerson backpay through the date of trial.

■ Our review of the evidence convinces us that it was sufficient to support the jury's conclusion. Dickerson's work experience previous to applying at Deluxe had been in sales and inspection work. She had no prior experience as a food service worker, and indicated that she was not interested in this type of work. Dickerson introduced substantial evidence that Deluxe was aware that she was not applying for and was not interested in cafeteria work. When she applied with Deluxe, Dickerson left blank the question regarding what kind of work she would like to do, but testified that she informed Deluxe that she did not want cafeteria work. Deluxe's interviewer, Gloria Baum, testified that during her first interview with Dickerson, Dickerson stated she was not interested in cafeteria work. An employee of Deluxe also noted on Dickerson's application form that she was not interested in this type of work.[5] In view of Dickerson's extensive non-cafeteria work experience and Deluxe's·knowledge that she was interested only in non-food service work, it would not necessarily have been unreasonable for Dickerson to refuse the job offers which Deluxe alleges it made. Thus, Dickerson's refusal of these offers would not automatically terminate the accrual of back pay damages.[6]

Deluxe relies on *Ford Motor Co. v. E.E.O.C.,* —— U.S. ——, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), in which the Supreme Court held that an employer's unconditional job offer to Title VII plaintiffs cut off the accrual of back pay damages. *Ford Motor* is not applicable to a case such as this. Unlike the situation in *Ford Motor,* here it

---

of Labor employee who worked on Dickerson's case testified that a job offer was made. This testimony simply conflicted with other evidence in the record and did not establish as a matter of law that Dickerson received an offer from Deluxe.

4. Instruction No. 17.

5. It is not clear when this notation was made on Dickerson's application. It appears to have been made some time after her initial interview in September 1978. There is no dispute, however, that this notation was made by an employee of Deluxe.

6. Deluxe contends that since Dickerson indicated she wished to be considered for the "split duty" job which was discussed in November 1978, her ultimate refusal of this job should stop the accrual of back pay. However, Dickerson introduced substantial evidence that the "split duty" job she believed she was applying for was different from the job defendant allegedly offered her. Dickerson understood that the job involved five hours per day in the bindery and three hours per day in the cafeteria. The job Deluxe allegedly offered her involved only three hours per day in the bindery and five hours per day in the cafeteria. The question of whether these jobs were substantially equivalent was one for the jury to resolve.

was not conclusively established that Deluxe offered Dickerson a job substantially equivalent to the one she was seeking. The *Ford Motor* holding does not impose on a plaintiff the duty to accept any job offered by the defendant. The Supreme Court stated in *Ford Motor* that "[T]he un- or under-employed claimant need not go into another line of work, accept a demotion, or take a demeaning position." —— U.S. at ——, 102 S.Ct. at 3065, 73 L.Ed.2d at 732. The Court cited *NLRB v. The Madison Courier, Inc.*, 472 F.2d 1307, 1320–21 (D.C. Cir.1972), in which the District of Columbia Circuit stated that a claimant need not "seek employment which is not consonant with his particular skills, background, and experience."

Deluxe next argues that Dickerson did not satisfy all conditions precedent to the commencement of her ADEA lawsuit because she failed to file a written charge of discrimination with the Department of Labor.[7]

After Dickerson's initial telephone call to the Department of Labor a Department employee visited Dickerson at her home on September 15, 1978. During this visit the Department of Labor employee filled out a written statement outlining Dickerson's allegations regarding Deluxe. Dickerson signed this written statement and returned it to the Department of Labor employee.

■ The purpose of the notice requirement of 29 U.S.C. § 626(d) is "to provide the Department [of Labor] with sufficient information so that it may notify prospective defendants and to provide the Secretary with an opportunity to eliminate the alleged unlawful practices through informal methods of conciliation." H.Conf.Rep. No. 95–950, 95th Cong., 2d Sess. 12, *reprinted in*

1978 U.S.Code Cong. & Ad.News at 534. Accordingly, the charge which a plaintiff must file with the Department need not comply with the technical rules of legal pleading. "[T]he 'charge' requirement will be satisfied by the filing of a written statement which identifies the potential defendant and generally describes the action believed to be discriminatory." *Id.*

■ We are convinced that the "Employee Personal Interview Statement" which Dickerson submitted to the Department of Labor satisfies the requirements of 29 U.S.C. § 626(d). The statement identifies Deluxe Check Printers by name and sets forth Dickerson's allegations of discrimination, stating that she applied for work with Deluxe and was told that defendant was not hiring, and that she discovered later that several other people who "appeared to be below 40 years of age" had been hired by defendant after defendant had told her there were no openings. Dickerson set out in her written statement that she was seeking "proofreader or plant work" with Deluxe and that she wanted to be awarded seniority retroactive to the date when she would have been hired in the absence of discrimination.

The cases cited by Deluxe on this issue are distinguishable. In *Woodard v. Western Union Telegraph Co.*, 650 F.2d 592 (5th Cir.1981),[8] *Reich v. Dow Badische Co.*, 575 F.2d 363 (2d Cir.1978), *cert. denied* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1979), *Enos v. Kaiser Industries Corp.*, 443 F.Supp. 798 (D.D.C.1978), *Lopez v. Sears, Roebuck & Co.*, 493 F.Supp. 801 (D.Md.1980), and *Hughes v. Beaunit Corp.*, 12 F.E.P. Cases 1564 (E.D.Tenn.1976), the plaintiffs did not file any type of written charge within the applicable time limits, but rather made only

---

**7.** 29 U.S.C. § 626(d) provides:
  No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary [of Labor].

**8.** In *Woodard* an additional issue was whether plaintiff sufficiently notified the Secretary of Labor that he intended to sue. At the time that the plaintiff in *Woodard* initiated his ADEA

action, § 626(d) required specifically that a plaintiff notify the Department of his "intent to sue" the defendant employer at least sixty days before the suit was filed. Section 626(d) has been amended to require only that a plaintiff file a "charge" with the Department of Labor. The amended § 626(d) has been in effect throughout Dickerson's dealings with Deluxe Check Printers.

oral complaints of discrimination. In *Burgett v. Cudahy Co.,* 361 F.Supp. 617 (D.Kan. 1973), the primary issue was whether one plaintiff's notice of intent to sue could serve as notice on behalf of three other plaintiffs who were not named specifically. *Berry v. Crocker National Bank,* 13 F.E.P. Cases 673 (N.D.Cal.1976), involved a substantially different fact situation from that present here. In this case it is clear that Dickerson signed the "Employee Personal Interview Statement" made out by the Department of Labor employee, thereby adopting it as her charge for purposes of § 626(d).

The Department of Labor itself believed that Dickerson had satisfied the "written charge" requirement. In a letter of August 30, 1978, the Department informed Dickerson that her telephone call alone had satisfied the "charge" requirement of 29 U.S.C. § 626(d). Throughout its dealings with this case, the Department of Labor continually referred to "the charge filed" by Dickerson, and never refused to take action because of the lack of an adequate written charge. Thus, even if we were to conclude that Dickerson's written charge was in some way technically deficient, such a deficiency would not necessarily prevent her from recovering in view of the Department of Labor's assurances that she had complied with the requirements of 29 U.S.C. § 626(d). *See: Jennings v. American Postal Workers Union,* 672 F.2d 712 (8th Cir.1982).

We conclude that the arguments made by Deluxe Check Printers, Inc., in its cross-appeal are without merit.

The award of damages to appellant Frances Dickerson in the amount of $62,000 is affirmed. The case is remanded to the district court with directions (1) to enter an order compelling Deluxe Check Printers to employ Frances Dickerson in a position in the plant at Deluxe's St. Louis County facility, and (2) to conduct a hearing on Dickerson's equitable claims to pension and profit sharing benefits, "red circling", additional back pay for the period between the date of the trial court award and the date of appellant's employment with Deluxe, and such other equitable relief as may be appropriate.