**Emery J. HILL, Plaintiff-Appellee,**

v.

**SPIEGEL, INC., a Delaware corporation, and Spiegel of Ohio, Inc., a Delaware corporation, Defendants-Appellants.**

**No. 81–3584.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 1, 1982.

Decided May 31, 1983.

Richard Robin (argued), Vedder, Price, Kaufman & Kammholz, Chicago, Ill., Thom-

as L. Dalrymple, Fuller & Henry, Toledo, Ohio, Richard A. Kaminsky, Richard C. Robin, Theophil C. Kammholz, Vedder, Price, Kaufman & Kammolz, Chicago, Ill., for defendants-appellants.

John Ashworth (argued), Ted M. McKinniss, Marion, Ohio, for plaintiff-appellee.

Before LIVELY and MARTIN, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

This action arises under 29 U.S.C. §§ 621 *et seq.* (1967), *as amended by* Age Discrimination in Employment Act Amendments of 1978, Pub.L. No. 95–256, § 1, 92 Stat. 189. Plaintiff-appellee Emery J. Hill brought this action against defendant-appellant Spiegel, Inc., a Delaware corporation, alleging that Spiegel terminated his employment on the basis of age. The case was tried before a jury which returned a verdict in favor of Hill. The jury awarded Hill $230,-000.00 actual and compensatory damages for the loss of wages and income, $80,000.00 damages for pain and suffering, moving and related expenses, and found Spiegel's conduct to be "willful." The district court thereafter ordered a remittitur reducing the amount of actual and compensatory damages to $115,000.00, awarding liquidated damages in an equal amount, and awarding $80,000.00 for pain and suffering and moving costs. The court further awarded Hill attorneys' fees, costs and expenses. Spiegel brings this appeal claiming numerous errors below, including the award of damages for pain and suffering. We find merit in some of Spiegel's claims, and thus vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

## BACKGROUND

On February 26, 1976, Emery Hill was terminated from his job as an executive with Spiegel, Inc., a well known mail-order business. Hill was 57 years old at the time and had been in the employ of Spiegel for more than 26 years, most recently as a regional manager in the company's catalog order store (COS) division. Hill's termination came at a time when Spiegel was suffering from a serious decline both in revenues and sales.

Faced with Spiegel's declining profitability, the Beneficial Corporation, Spiegel's parent company, retained a management consulting firm, Booz, Allen & Hamilton, to study the Spiegel organization. The consulting firm concluded that Spiegel's management was "old, inbred, [and] overpaid," and recommended that the entire COS division be liquidated. Beginning sometime in 1975, Spiegel effected a reorganization of the COS division. At that time there were four regional managers in the COS division, one of whom was Hill. In 1976, Hill's employment was terminated and shortly thereafter his position was eliminated. In March 1978, Spiegel abolished the entire COS division.

### I

■ Initially, we are presented with a question of first impression in this circuit concerning the propriety of awarding damages for pain and suffering under the ADEA. We note that six of our sister circuits have recently considered this issue and have held that an award of pain and suffering damages is both outside the scope of the ADEA and wholly inconsistent with the expressed congressional purpose of the Act. *Pfeiffer v. Essex Wire Corp.,* 682 F.2d 684 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 453, 74 L.Ed.2d 606 (1982); *Naton v. Bank of California,* 649 F.2d 691 (9th Cir.1981); *Slatin v. Stanford Research Institute,* 590 F.2d 1292 (4th Cir.1979); *Vazquez v. Eastern Air Lines, Inc.,* 579 F.2d 107 (1st Cir.1978); *Dean v. American Security Insurance Co.,* 559 F.2d 1036 (5th Cir. 1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978); and *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834 (3d Cir.1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978). We find the reasoning as set forth in these opinions thorough and persuasive, and agree that damages for pain and suffering are not recoverable in ADEA actions. We

conclude, therefore, that the district court erred in allowing the award of damages for pain and suffering.

## II

■ A related question in this appeal concerns the admission of testimony pertaining to pain and suffering. Spiegel contends that the testimony of both Hill and his wife on this issue was not only inadmissible but also was highly prejudicial and inflammatory, and deprived it of the right to a fair trial. We agree.

The only purpose for which the testimony of Hill and his wife had any relevance was to show that Hill and his family had incurred pain and suffering from his loss of employment. As heretofore determined, however, an award of damages for pain and suffering is not authorized under the ADEA. The testimony of both Hill and his

wife[1] was therefore inadmissible under the federal rules. The trial court's error in admitting this evidence affected the substantial rights of Spiegel, and for this reason it is entitled to a new trial. Fed.R. Civ.P. 61.

## III

We now address the district court's admission of testimony pursuant to Rule 801(d)(2)(D) of the Federal Rules of Evidence. This Rule provides that a statement is not hearsay if it is offered against a party and is "a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship . . . ."

■ Spiegel argues on appeal, as it did at trial, that the testimony of Matthew Baker constituted hearsay in that it fell outside

1. The testimony of Mildred Hill on pain and suffering was, in part, as follows:

> Q. Will you briefly tell the jury what your observations were when you saw him that day after he had learned that he was fired?
> A. All right. February 26th was very soon after the death of my mother. She had passed away just a couple of weeks before that. I was at home. He didn't call me. He came home suddenly in the middle of the morning, I guess about 10:30 or 11:00 o'clock, which was abnormal, and when he came in I was surprised. I thought that he was leaving to go out of town. I had no knowledge of anything happening.
> Q. Excuse me. Well, please continue.
> A. He came in. He was white and he was cold, and he told me in very brief words that he had been fired. I didn't know it was coming. I wasn't prepared for it. I was—I really didn't know how to handle it.
>
> \*  \*  \*  \*  \*  \*
>
> The next day he got up at the normal time that he would have gotten up had he been going to work. He went through the normal routine of preparation, bath and so forth, shaving, came downstairs, dressed to go to work, tie, white shirt, dress clothes, had his breakfast and went over to a desk which was adjacent to the kitchen. There is a telephone there. He sat at the desk. That is what he did, he sat at the desk all day. He had pencils and some writing materials there to write on. He sat at the desk. I tried to talk to him. I went to one side of him and tried to engage him in conversation. It was difficult. It was hard to get a conversation going.
>
> \*  \*  \*  \*  \*  \*

> Q. Did you observe any change in the conduct of the children?
> A. My children?
> Q. Yes.
> A. Yes.
> Q. What did you observe?
> A. My youngest one, my youngest daughter cried. She didn't really understand. They both did cry. They both broke away from their friends. They didn't want to talk to or participate in things with their friends. The oldest one was hurt the most.
> Q. Who is that?
> A. Alice. She dropped all after-school functions. They both continued in school, though. One is nine and one is 15. Alice was hurt the most. She absolutely refused to do the things she had been doing with her friends in the after-school hours. She dropped out of a community band that she was involved with. She was involved at the time in painting some fireplugs around town for the Bicentennial celebration. She refused to do any more in that direction at all.
> Finally, she stayed at home. She just stayed at home every evening. Her friends, when we did leave Marion where we had lived all of her life, wanted to give her a going-away party. When she learned of it she didn't want to go. I had to make her go, almost force her to go to her own going-away party.

App. 354–358.

the coverage of Rule 801(d)(2)(D). We agree. Baker, a former Spiegel district manager employed under Hill's supervision, testified in behalf of Hill to conversations he had with several other Spiegel employees concerning Hill's discharge. The essence of Baker's testimony was that he was told by Spiegel employees Ed Williams, Danny Seligman, and George Phillips, that Hill had been discharged because of his age and income. Baker further testified as to how these men relayed to him the terrible and traumatic experience of Hill's discharge, and its effect on incumbent management.

Spiegel submits that there was no evidence that these declarants, as to whose comments Baker testified, were involved in the decision to discharge Emery Hill. Spiegel argues, and we agree, that since there was no evidence that either Williams, Seligman, or Phillips had any involvement in the decision to discharge Hill, there was no basis for finding that the statements of these declarants concerned "a matter within the scope of [their] agency." Rule 801(d)(2)(D). We recognize that under this Rule, as is pointed out in the Notes of the Advisory Committee, it is not necessary to show that the declarant had authority to make the statement. But it is necessary, we repeat, to show, to support admissibility, that the content of the declarant's statement concerned a matter within the scope of his agency. The evidence of record tends to establish that Williams was an "operations manager" at Spiegel, about whose duties and responsibilities Baker testified he was uncertain. Baker further testified that Seligman was employed as a "catalog distribution manager," involved in the requisition and circulation of catalogs. Finally, Baker testified that George Phillips became a regional manager of the COS division upon Hill's discharge. The mere fact that each of these men was a "manager" within the expansive Spiegel organization is clearly insufficient to establish that matters bearing upon Hill's discharge were within the scope of their employment. Their statements to Baker concerning Hill's discharge cannot, on this record, be considered as vicarious admissions by Spiegel. *Cf.*

*Oreck Corp. v. Whirlpool Corp.,* 639 F.2d 75, 80–81, n. 3 (2d Cir.1980), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981); *see also* Notes of Advisory Committee on Proposed Rules, Fed.R.Evid. 801. We conclude that the admission of this evidence on this record was reversible error.

### IV

■ We determine, however, that the district court properly denied Spiegel's motion for judgment n.o.v. that was based on insufficient admissible evidence. In so ruling, we recognize the well established rule that such motions may be granted only if, viewing the admissible evidence most favorable to the party opposing the motion, a reasonable trier of fact could draw only one conclusion. *See Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); *Brady v. Southern Railway,* 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943); *Morelock v. NCR Corp.,* 586 F.2d 1096 (6th Cir.1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979).

As an appellate court, we are bound by the same standard as the court below; that is, after viewing the evidence and drawing all reasonable inferences in favor of the opposing party, are we of the opinion that the evidence "points so strongly in favor of the movant that reasonable minds could not come to a different conclusion[?]" *Morelock,* 586 F.2d at 1104–1105. We are not. There was, for example, sufficient evidence that Spiegel, in discharging Hill, relied on Booz, Allen & Hamilton's report that the company's management was "old, inbred, [and] overpaid." Also, there was sufficient evidence that the organizational changes suggested by Booz, Allen & Hamilton were implemented by Russell Pascale, Hill's immediate supervisor, and approved by other members of Spiegel's senior management.

### V

Spiegel challenges the award for loss of earnings as excessive in that it covered the period from discharge to trial. It argues

that its liability for loss of earnings terminated on October 1, 1976, the date on which the position of regional manager in the COS division was eliminated, and, in any event, terminated when the COS division was abolished. For the following reasons, we conclude that the district court's order of remittitur in calculating the loss for the entire period from the date of Hill's discharge through the date of trial is not supportable on the record before us.

■ Once the existence of damages is shown with reasonable certainty, "the precise amount is necessarily left to the discretion of the finder of fact, to be exercised reasonably and within the range of the proofs in the case." *Drayton v. Jiffee Chemical Corp.,* 591 F.2d 352, 366 (6th Cir. 1978); *see also Blackwell v. Sun Electric Corp.,* 696 F.2d 1176, 1193 (6th Cir.1983) (Krupansky, J., dissenting).

■ Spiegel contends that since the regional manager position once held by Hill was eliminated on October 1, 1976, loss of salary should be awarded only up to that date. Spiegel's argument is without merit. Hill's replacement as a regional manager, David Decker, continued working at Spiegel after October 1, 1976. The more reasonable and supportable period upon which Spiegel's liability for loss of salary should be predicated is from the date of discharge to the date on which Spiegel's COS division was entirely eliminated in March 1978.

## VI

We turn now, in conclusion, to Spiegel's contention that the district court committed error as a matter of law in expressly refusing to exercise its discretion before entering judgment for liquidated damages. Spiegel contends that even after the jury's finding of willfulness it was within the court's discretion not to award full liquidated damages, or, in the alternative, to award an amount less than that equal to the award of compensatory damages if it determined that Spiegel had acted in "good faith."

■ An award of liquidated damages under the ADEA can be made only upon a finding that the Act was willfully violated. 29 U.S.C. § 626(b). Once, however, the jury found a willful violation and the finding was supported by sufficient evidence, the award of liquidated damages was the duty of the trial court. The court need not, in an ADEA case, make an independent determination of good faith of the employer. Contrary to Spiegel's contention, Section 11 of the Portal-to-Portal Pay Act of 1947, 29 U.S.C. § 260, which would require a determination of "good faith" by the district court, is not applicable here. *Rose v. National Cash Register Corp.,* 703 F.2d 225 (6th Cir.1983). Moreover, for the same reason, the district court was correct insofar as it held that it was without discretion, once the jury found willfulness, to award liquidated damages in an amount other than that equal to the award for compensatory damages.

Accordingly, for the reasons stated herein, we vacate the judgment of the district court and remand for a new trial and such other proceedings as may be required.