**Donald L. ARMSEY, Plaintiff,**

**v.**

**The NESTLE COMPANY, INC., Defendant.**

**No. C–1–83–1466.**

United States District Court, S.D. Ohio, W.D.

July 25, 1985.

James B. Helmer, Jr., Trial Atty., (Ann Lugbill, Virginia C. Whitman, of counsel), Cincinnati, Ohio, for plaintiff.

G. Roger King, Columbus, Ohio, Paul M. Heylman, Washington, D.C., for defendant.

## OPINION AND ORDER

SPIEGEL, District Judge.

Plaintiff Donald Armsey ("Armsey"), a sales representative, brought this action against his employer, The Nestle Company, Inc. ("Nestle"), alleging that his discharge on April 21, 1983 at age 54 violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (1982) ("ADEA"). A jury trial resulted in an award to the plaintiff of $33,255.00 in back pay damages and $33,255.00 in liquidated damages.

This matter is before the Court pursuant to Armsey's post-trial motion for equitable relief (doc. no. 37). The defendant filed a memorandum in opposition (doc. no. 44) to which the plaintiff replied (doc. no. 47). The defendant filed post-trial motions as well for a judgment notwithstanding the verdict or a new trial (doc. no. 38) and for an order denying the liquidated damages award (doc. no. 39). The plaintiff opposes those motions (doc. no. 45). For the following reasons, the plaintiff's motion for equitable relief is granted and both of the defendant's motions are denied.

### I. Plaintiff's Motion for Reinstatement or Front Pay

The plaintiff requests that the Court reinstate him to employment with Nestle in a position comparable with the one he formerly held. Armsey additionally moves for the payment of his annual salary ($18,683.91) and benefits, as if he were employed, in the event that reinstatement is not immediately forthcoming. Alternatively, the plaintiff requests an award of front pay in the sum of $231,681.00.

Section 626(b) of the ADEA provides in pertinent part:

"In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion...."

29 U.S.C. § 626(b) (1982). Although not mandatory, reinstatement is the preferred remedy under the ADEA and should be ordered whenever it is appropriate. *Maxfield v. Sinclair International*, 766 F.2d 788 (3d Cir.1985); *EEOC v. Prudential Federal Savings & Loan Association*, 763 F.2d 1166 (10th Cir.1985). The purpose of a court's discretion to order reinstatement is to fashion relief which would make the plaintiff whole. *Merkel v. Scovill, Inc.*, 570 F.Supp. 141, 143 (S.D.Ohio 1983). Ordinarily, a plaintiff will be made whole by a back pay award coupled with an order for reinstatement. *Maxfield*, 766 F.2d at 796; 570 F.Supp. at 143.

Turning next to examine the circumstances of this case to ascertain whether a reinstatement order for Armsey is feasible, several facts are noteworthy. The Nestle Company employs approximately 5,000 people in the United States and is a subsidiary of the Swiss Nestle international corporation. Armsey had been employed 22 years as a Nestle's Retail Sales Representative when he was unlawfully discharged at age 54 on April 21, 1983. He has had difficulty in finding work comparable to his sales position at Nestle and has, in fact, earned only about $9,000.00 since his discharge.

The plaintiff wants to return to work as a Retail Sales Representative or something equivalent. If reinstated to his former position, Armsey will have a new immediate supervisor but will still work for James Kincaid, the Regional Sales Manager for Cincinnati. However, the sales position is structured such that the plaintiff would not be in daily contact with his supervisors, thereby lessening any tension between the parties. The plaintiff states that he will do a good job for the defendant and will follow Kincaid's instructions. Armsey also offers to accept a Retail Sales Representative position with Nestle in Florida. We further acknowledge that at age 56, the plaintiff has a number of productive years ahead of him.

The defendant claims that reinstatement is not feasible because the plaintiff is an unsatisfactory employee. Yet at trial, the defendant argued that Armsey was discharged for two falsification incidents, not because of his poor job performance. (*See, e.g.,* T.332: "Yes, Your Honor, our articulated business reasons for the termination of Mr. Armsey specifically to [sic] incidents of falsification." [1] As late as April 14, 1983, Armsey was evaluated at a satisfactory level. (Stipulation of the Parties at T.504). No persuasive evidence was presented at trial to warrant the conclusion that the plaintiff had been an unsatisfactory sales representative.

■ After carefully weighing the factors in the case *sub judice,* the Court concludes that Armsey's reinstatement is both feasible and proper. This case does not present the situation where there is no position available nor where the evidence points to a relationship between the parties that is so irreparably damaged by animosity or extreme hostility that reinstatement is impracticable. *See Maxfield,* 766 F.2d at 796; *Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 728–29 (2d Cir.1984). Hostility generated from the heat of litigation is not a sufficient reason to deny reinstatement. *Dickerson v. Deluxe Check Printers, Inc.,* 703 F.2d 276, 281 (8th Cir.1983); 570

F.Supp. at 144. Where hostility has been the basis for denying reinstatement, the employment relationship was contentious long before litigation was initiated. 570 F.Supp. at 144. Such is not the situation between the parties in this case.

In addition, in those cases where courts have declined to reinstate, the plaintiffs have occupied "high level, unique or unusually sensitive positions" in the defendant's organization. *Dickerson,* 703 F.2d at 280. In contrast, Armsey occupied an entry level sales position prior to his discharge. When reinstated, he would again occupy such a position, which is not unique or unusually sensitive. *See* 570 F.Supp. at 144. A productive and cooperative relationship between Armsey and Nestle is possible in either Cincinnati or Florida.

The defendant further argues that the doctrine of unclean hands bars the plaintiff from equitable relief. This claim is based on the defendant's position that Armsey committed perjury by making statements at trial which contradicted those made in a prior EEOC charge and those made in his deposition.

■ At trial, Nestle objected to Armsey's testimony concerning the Brentwood I.G.A. incident, stating that Armsey's statements contradicted his deposition testimony and parroted his attorney's opening argument. (T.296). After hearing argument from counsel (T.294–301), the Court concluded that Armsey's testimony did not constitute either an absolute denial of his prior statements or perjury.

The Court stands by its previous analysis. Whether the plaintiff was inarticulate, confused, nervous, evasive, testifying to the best of his recollection, or lying about either the EEOC or Brentwood I.G.A. incidents are questions of credibility and weight of the evidence that properly belong in the province of the jury.

■ The defendant was free to comment on the alleged inconsistencies in final argument and attempt to persuade the jury to

1. Citations to the trial transcript will be abbreviated as "T."

its position. Indeed, the defendant did just that and argued the point at length during its closing argument:

> Mr. Armsey testifies and I was wondering what was going to happen. He gets on the stand and he adopts those, and I'll tell you they're eloquent words of his counsel, on the stand in his direct testimony. He said that Anna Rocky told him, 'You do what you have to do.' There is one major flaw with this testimony and this argument or, frankly, we wouldn't be here. Plaintiff himself, Mr. Armsey, twice, not once, but twice, previously at a deposition before trial swore that Anna Rocky didn't tell him quote, 'You do whatever you have to do'....

(T.484; *see* 485–88).

> "I submit to you that it is no defense to perjury, if you were mad. I submit it is no excuse for perjury, if you are mad. Being mad does not give anyone a license to lie and then sign a statement, nor does wanting to win your case."

(T.488; *see* T.489–490). The obvious inference from the jury's verdict is that the defendant's attempt to persuade the jury on this point failed—the plaintiff's testimony was credible.

Having before it no persuasive evidence substantiating the defendant's claim that the plaintiff committed perjury, the Court finds Nestle's argument for the application of the unclean hands doctrine groundless.

Compelling equitable relief under these circumstances is consistent with the ADEA's purpose[2] of fashioning the most complete relief possible toward putting the plaintiff back into the position he would have occupied but for the defendant's unlawful age discrimination.

Accordingly, the defendant is hereby ORDERED to reinstate the plaintiff to a Retail Sales Representative position at Nestle in either Cincinnati or Florida, with all rights related to that status restored, upon entry of final judgment.

IT IS FURTHER ORDERED that the plaintiff be awarded front pay until he is actually reinstated. The front pay shall be equivalent to the benefits and salary of a Retail Sales Representative ($18,683.91), as if he were employed by the defendant, commencing from the date of the jury's Answers to Interrogatories, February 7, 1985.

## II. Defendant's Motion for Judgment Notwithstanding the Verdict or a New Trial

The defendant's first motion is for a judgment notwithstanding the verdict ("judgment N.O.V.") or, in the alternative, for a new trial, pursuant to Fed.R.Civ.P. 50(b), 59. (Doc. No. 38). The standard to be applied in evaluating the propriety of granting judgment n.o.v. or a new trial was formulated by the United States Court of Appeals for the Sixth Circuit in *Morelock v. National Cash Register Corp.*, 586 F.2d 1096, 1104 n. 10 (6th Cir.1978), *quoting Gillham v. Admiral Corp.*, 523 F.2d 102, 109 (6th Cir.1975):

> " '[A] judgment n.o.v. may not be granted unless reasonable minds could not differ as to the conclusion to be drawn from the evidence.' "

*See Green v. Francis*, 705 F.2d 846, 849 (6th Cir.1983).

The defendant contends that the misconduct of the plaintiff necessitates a new trial. As discussed above, the Court is unpersuaded that the incidents of which the defendant complains were acts of intentional misconduct rather than a result of the plaintiff's inarticulateness, faulty recollection, nervousness, confusion, or inadvertance. Even assuming *arguendo* that he had lied, the defendant was not prejudiced since it fully exercised its opportunities of cross-examination and closing argument to delineate and argue at length its position on the alleged inconsistent testimony. The

---

2. The purposes of the ADEA are "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621. *See Western Air Lines, Inc. v. Criswell,* — U.S. —, —, 105 S.Ct. 2743, 2749–50, 86 L.Ed.2d 321 (1985).

credibility and weight of the evidence was a matter for the jury to decide. In reviewing the totality of the circumstances presented by the record, the Court remains convinced that a fair trial was conducted.

■■■ The issue raised by a judgment n.o.v. motion is whether sufficient evidence was presented to raise a question of fact for the jury. 586 F.2d at 1104. The district court may neither weigh the evidence, pass on the credibility of witnesses, nor substitute its judgment for that of the jury. *Id.* It is axiomatic that the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor. *Id.* Because the grant of a judgment n.o.v. deprives the nonmoving party of a determination of the facts by a jury, such a motion "should be cautiously and sparingly granted." *Prudential,* 763 F.2d at 1171.

■■■ The plaintiff bore the ultimate burden of proving the elements of his ADEA claim: 1) that, at age 54, he was within the protected age group of 40 and 70 years old; 2) that he was discharged from Nestle; 3) that he was qualified for the sales position; and 4) that he was replaced by a younger person. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). Alternatively, Armsey could have proven his claim by establishing by a preponderance of the evidence that age was a determining factor in his discharge. *Blackwell v. Sun Electric Corp.,* 696 F.2d 1176, 1180 (6th Cir.1983). The defendant presented evidence that Armsey was discharged for a legitimate, nondiscriminatory purpose. The plaintiff then presented sufficient evidence to create a jury question on the issue of whether the employer's proffered explanation was worthy of credence. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). Armsey also bore the burden of demonstrating his entitlement to liquidated damages.

In reviewing the record under the above standard, the Court finds that there was sufficient direct and circumstantial evidence presented to raise a question of fact for the jury. (*See* T.331–341). Because reasonable minds could differ as to the conclusions to be drawn from the evidence, the Court declines to disturb the jury's verdict by granting the motion for a judgment n.o.v. or a new trial.

### III. Defendant's Motion on Liquidated Damages

The defendant lastly moves that no liquidated damages be awarded (doc. no. 39). The standard of willfulness in an ADEA case used to justify an award of liquidated damages was recently elucidated by the *Thurston* Court, which held that willful conduct is established if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, ——, 105 S.Ct. 613, 625–26, 83 L.Ed.2d 523 (1985); *Whitfield v. Knoxville,* 756 F.2d 455, 463 (6th Cir.1985). The *Thurston* decision further provided that if a defendant acted reasonably and in good faith in attempting to determine whether its conduct was prohibited by the ADEA, the action is not willful. 105 S.Ct. at 626.

This Court incorporated the *Thurston* standard into the jury instruction charged, which stated in part:

To receive liquidated damages, the plaintiff should prove by a preponderance of the evidence that the defendant acted willfully in discharging him. If the plaintiff does not establish by a preponderance of the evidence that the defendant acted willfully, then you must find for the defendant on the issue of liquidated damages.

Willful means that the employer's actions were voluntary and intentional. An employer acts willfully if it either knew or showed reckless disregard for the matter of whether the discharge of the plaintiff was prohibited by the ADEA. If you find that the Nestle Company acted in good faith and had reasonable grounds for believing that the plaintiff's discharge did not violate the ADEA, then

you must find that the Nestle Company's conduct was not willful and that plaintiff was not entitled to an award of liquidated damages.

(T.512–13).

The defendant argues that the decision in *Hill v. Spiegel, Inc.,* 708 F.2d 233 (6th Cir.1983), which relied upon *Rose,* 703 F.2d at 225 in holding that a district court must award liquidated damages once a jury finds willfulness, is no longer good law under *Thurston.* Rather, the argument continues, the Court must make an independent determination of whether to award liquidated damages based on the Court's review of the record.

The Court is not persuaded by the defendant's legal analysis and argument. In *Rose,* the defendant claimed that the district court erred in not making a determination of the good faith of the defendant, as provided in 29 U.S.C. § 260,[3] independent of the jury's verdict on willfulness. 703 F.2d at 230. The Sixth Circuit held that 29 U.S.C. § 260 is inapplicable to ADEA actions and that when a jury determines that the defendant's violation was willful, the trial judge is not obligated to consider the employer's good faith defense. *Id.*

Subsequently, the Supreme Court observed in *Thurston* that:

> Section 11 of the PPA, 29 U.S.C. § 260, provides the employer with a defense to a mandatory award of liquidated damages when it can show good faith and reasonable grounds for believing it was not in violation of the FLSA. Section 7(b) of the ADEA [29 U.S.C. § 626(b)] does not incorporate § 11 of the PPA, contra *Hays v. Republic Steel Corp.,* 531 F.2d 1307 (CA 5 1976). Nevertheless, we think that the same concerns are reflected in the proviso to § 7(b) of the ADEA.

105 S.Ct. at 625 n. 22.

Recently, the Sixth Circuit announced that the *Thurston* case "overrules so much

of this court's decision in *Rose* as held that an employer's protestations of good faith are irrelevant." *Whitfield,* 756 F.2d at 463.

It is also important to bear in mind that by enacting the 1978 amendment to the ADEA to provide for jury trials in private civil actions, Congress wanted to insure that the parties were afforded a jury determination as to the pertinent findings for, *inter alia,* a liquidated damages claim, which in this case are the findings of willfulness or good faith and reasonableness. 703 F.2d at 228 n. 2. *See* H.Conf.Rep. No. 950, 95th Cong., 2d Sess. 13–14, *reprinted in* [1978] U.S.Code Cong. & Ad.News 504, 528, 535. In contrast, under the PPA, the issue of liquidated damages is to be determined by the court as opposed to the jury. *McClanahan v. Mathews,* 440 F.2d 320, 322 (6th Cir.1971).

■ Because the Supreme Court has expressly held that 29 U.S.C. § 260 is not incorporated by § 626(b) of the ADEA, a court is not required to make an independent judgment of the defendant's good faith and reasonableness defense prior to awarding liquidated damages. Contrary to the defendant's position, neither can such a mandatory requirement be inferred from the statement in *Thurston* that "the same concerns [the defense contained in 29 U.S.C. § 260] are reflected in the proviso to § 7(b) of the ADEA [29 U.S.C. § 626(b)]."

■ Consistent with the legislative history of the ADEA, *see* 703 F.2d at 228 n. 2, the factual inquiry into the defendant's good faith and reasonable grounds for believing its conduct was not a violation of the ADEA was properly submitted to and considered by the jury in this case. The weakness present in both the *Hill* and *Rose* cases is that the issues of the defendant's good faith and reasonableness were con-

---

**3.** The Portal-to-Portal Act of 1947 ("PPA"), 29 U.S.C. § 260 (1982) states:

   ... if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that

he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] ..., the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed....

sidered by neither the jury nor the court. In contrast, the fact that the liquidated damages instruction included an instruction on the defense is the critical distinguishing factor between the instant case and the *Hill* and *Rose* cases. Furthermore, in the Sixth Circuit's recent opportunity to delineate the proper standard on liquidated damages, it narrowly limited its criticism of *Rose* to the single point of its holding that the good faith and reasonableness defense is irrelevant. It is noteworthy that the Sixth Circuit did not retreat from its position that the district court need not make a determination independent of the jury's verdict on willfulness. Therefore, the Court concludes that the judgment n.o.v. standard is the proper standard of review of the jury's verdict awarding liquidated damages.

The jury was instructed that the plaintiff had the burden of proving by a preponderance of the evidence that Nestle acted willfully in discharging Armsey. The charge further provided that if the jury believed that Nestle acted in good faith and had reasonable grounds for believing that Armsey's discharge did not violate the ADEA, they must find that Nestle's actions were not willful.

After reviewing the record, the Court concludes that there was sufficient evidence presented at trial to raise a question for the jury on this issue. The testimony concerning the circumstances leading up to Armsey's discharge was replete with credibility evaluations to be made by the jury of the two central witnesses in this case: plaintiff Armsey and the defendant's employee, Kincaid. Moreover, Kincaid testified that he had not consulted with either Nestle's EEOC advisor, counsel, Brentwood I.G.A. owner Robert Cory, or Armsey prior to discharging the plaintiff. (T.393–94).

In construing the evidence in the light most favorable to the plaintiff and without reevaluating the credibility of the witnesses, the Court concludes that reasonable minds could differ as to the conclusion to be drawn from the evidence. The defend-

ant's motion to bar an award of liquidated damages is hereby denied.

In sum, the plaintiff's Motion for Equitable Relief in the Form of Reinstatement or, Alternatively, Front Pay (doc. no. 37) is GRANTED. The defendant's Motion for Judgment Notwithstanding the Verdict or, in the Alternative, For a New Trial (doc. no. 38) and Motion that No Liquidated Damages be Awarded (doc. no. 39) are DENIED.

IT IS SO ORDERED.