**Robert MERKEL, Jacob M. Hughes, and Michael Cain, Plaintiffs,**

v.

**SCOVILL, INC., Defendant.**

**Nos. C–1–82–149 to C–1–82–151.**

United States District Court, S.D. Ohio, W.D.

July 28, 1983.

James B. Helmer, Jr., Cincinnati, Ohio, for plaintiffs; William E. Clements, Ann Lugbill, Cincinnati, Ohio, of counsel.

Charles Weiner, Cincinnati, Ohio, for defendant; Stanford G. Wilson, Robert Thompson, Atlanta, Ga., of counsel.

## OPINION, ORDER AND JUDGMENTS

SPIEGEL, District Judge.

These consolidated cases came before the Court for entry of a General Verdict for each plaintiff pursuant to a pre-trial agreement by the parties that the Court would enter the General Verdict consistent with special interrogatories answered by the jury. All of the plaintiffs have claims under the Federal Age Discrimination In Employment Act (ADEA), 29 U.S.C. §§ 621 et seq. Plaintiff Hughes also has a claim for age discrimination under Ohio Revised Code § 4101.17. Plaintiff Merkel has a state common-law claim for unlawful discharge. The jury found for the plaintiffs on all claims. In addition, with respect to ADEA claims, the jury found that defendant acted wilfully in discharging each of the plaintiffs.

Plaintiff's post-trial brief (doc. 81) addresses the issues of reinstatement, back pay, and liquidated damages under the ADEA. Defendant filed a memorandum in opposition (doc. 86), to which plaintiffs responded (doc. 88). Plaintiffs addressed the issue of attorneys' fees and costs in a separate brief (doc. 80); defendant filed a memorandum in opposition (doc. 84), to which plaintiffs replied (doc. 89). The Court reserves its decision on the issue of attorneys' fees and costs until all post-trial motions have been decided.

### I. Reinstatement

All three plaintiffs sought reinstatement to their former positions in their complaints. They continue to do so and have filed affidavits to that effect (doc. 81, exs. A, B, C).

The defendant argues that reinstatement is inappropriate because placing these plaintiffs in their former jobs would make a mockery of company discipline and create a tense working atmosphere. Defendant also contends that reinstatement is not necessary to make plaintiffs whole in light of the amount of damages awarded, in particular the compensatory awards to plaintiffs Hughes and Merkel on their pendent state claims.

The ADEA gives the District Court discretion to order reinstatement, 29 U.S.C. § 626(b), but under the clear language of the statute reinstatement is not mandatory. This grant of discretion is to enable the court to fashion, insofar as possible, that relief which would make the victim of discrimination whole. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975) construing 42 U.S.C. § 2000e–5(g) (1970 Ed, Supp. III) which uses similar language with respect to the relief possible where a Title VII violation has been proved. See also *Gibson v. Mohawk Ribbon Co.,* 695 F.2d 1093, 1097 (8th Cir.1982).

The make-whole nature of the ADEA means, however, that reinstatement is typically awarded. *Cancellier v. Federat-*

*ed Department Stores,* 672 F.2d 1312 (9th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982). Equitable relief should be denied only for reasons which would not frustrate Congress' attempt to eradicate age discrimination and the make-whole nature of the ADEA. *Taylor v. Teletype Corp.,* 648 F.2d 1129, 1138 (8th Cir.), *cert. denied,* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981), quoting *Albemarle Paper,* 422 U.S. at 421, 95 S.Ct. at 2373. A large damage award is not a sufficient reason for denying reinstatement. *Dickerson v. Deluxe Check Printers Inc.,* 703 F.2d 276, 280 (8th Cir.1983). Neither is hostility resulting from the litigation. *Taylor v. Teletype Corp.,* 642 F.2d at 1139.

■ The cases in which reinstatement have been denied often involve managerial or unusually sensitive positions in the defendant's organization. *Dickerson,* 703 F.2d at 280 and cases cited therein. Where hostility has been the basis for denying reinstatement, the employment relationship was contentious long before the filing of the lawsuit. *Valcourt v. Hyland,* 503 F.Supp. 630, 634–35 (D.Miss.1980); *Combes v. Griffin Television, Inc.,* 421 F.Supp. 841, 846–47 (W.D.Okl.1976). *See also Ginsberg v. Burlington Industries, Inc.,* 500 F.Supp. 696, 699 (S.D.N.Y.1980) (plaintiff considered incompetent by all supervisors).

We find no facts in the instant cases which would justify us in denying reinstatement. The damages awarded, including the compensatory damages awarded pursuant to Merkel's and Hughes' state law claims, were not in lieu of reinstatement but rather to put plaintiffs into the position they would have been in the absence of their unlawful discharges. None of the three plaintiffs held sensitive management positions. Nor is there any persuasive evidence of hostility between plaintiffs and defendant prior to the filing of these lawsuits. Although reinstatement may create some disciplinary problems for defendant, the jury found that the determining factor in the discharge of each of the three plaintiffs was age in the cases of Hughes and Cain and retaliation in the case of Merkel. To deny reinstatement on the basis of hypothetical future problems where the jury has clearly found that defendant acted unlawfully would be in direct opposition to the ADEA's primary purpose of eliminating such behavior. Compelling employment is often the only way a Court can effect the ADEA's statutory purpose of eradicating discrimination. *Dickerson,* 703 F.2d at 280.

Accordingly, the Court Orders that all three plaintiffs be reinstated to their former positions at the Nutone Division of Scovill, Inc. In addition, and to further the make whole nature of the ADEA, we Order that the seniority status of each plaintiff and all rights related to that status be restored.

## II. *Back Pay*

The ADEA provides that "amounts owing" to a plaintiff for violations of the Act "shall be deemed to be unpaid minimum wages," 29 U.S.C. § 626(b). That section further provides the court with jurisdiction to grant "such legal or equitable relief as may be appropriate to effectuate the purposes of [the ADEA]." "Amounts owing" include "items of pecuniary or economic loss such as wages, fringes, and other job-related benefits." H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 13, reprinted in [1978] U.S. Code Cong. & Ad.News 504, 535.

■ The ADEA's primary purpose is that of ending age discrimination in employment. But where discrimination does occur, the ADEA's secondary purpose is to compensate the victims of such discrimination. *Cf. Ford Motor Company v. Equal Employment Opportunity Commission,* 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982) (Title VII). With respect to damages, the governing equitable principle under the ADEA is the concept of making the plaintiff whole. *Cline v. Roadway Express, Inc.,* 689 F.2d 481, 490 (4th Cir.1982); *Rodriguez v. Taylor,* 569 F.2d 1231, 1238 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). Although it is easy to recite the make-whole concept of the ADEA, it is far more difficult to apply

that concept to the facts of a particular case.

■ It is well settled that back pay awards include lost wages, pension benefits, and all other fringe benefits including life, dental, accidental death, and health insurance. The parties, however, dispute how each of these items is to be calculated and whether unemployment benefits and interim earnings are to be deducted from the back-pay award. We will consider each of the components of back-pay in turn and then the issue of deductibility.

## A. Lost Wages

The parties agree that this component of the back-pay award includes the salary to which each plaintiff would have been entitled except for his discharge from the date of discharge to the date of reinstatement or final judgment. The parties stipulated to the amounts that would have been paid through May 7, 1983 and to the current salary rate for each plaintiff (doc. 81, exs. D, E, F; doc. 86, exs. D, E, F). These figures are used in the judgments.

## B. Pension Benefits

■ The parties agree that plaintiffs, if reinstated, are entitled to have the amount that the employer would have contributed to each plaintiff's pension plan from the date of discharge to reinstatement posted to each plaintiff's plan. *Blackwell v. Sun Electric Corp.,* 696 F.2d 1176, 1185 n. 15 (6th Cir.1983); *Loeb v. Textron,* 600 F.2d 1003, 1021 (1st Cir.1979). The parties stipulated to the Plan Administrator's determination of these amounts. (doc. 81, exs. D, E, F; doc. 86, exs. D, E, F). Because plaintiffs are to be reinstated, the pension benefits are to be posted to their pension plans rather than paid directly to plaintiffs. However, the amounts are included in the back-pay award for purposes of determining the amount of liquidated damages to be awarded.

Plaintiff Merkel received a lump sum distribution of $1,269.68 from the pension plan upon his termination (doc. 86, affidavit of Margaret Poole). Accordingly, the judg-

ment will be reduced by this amount and defendant is Ordered to post $1,269.68 to plaintiff Merkel's pension plan. This repayment will put plaintiff Merkel in the position he would have been in had the unlawful discharge not occurred.

## C. Fringe Benefits

■ Plaintiffs assert that the back pay award should include the monetary value of health, disability, accidental death, dental and life insurance benefits they would have received had they not been discharged. They define these benefits as the value of the premiums which defendant would have paid to an insurance carrier on their behalf.

In *Blackwell v. Sun Electric Corp.,* the Court of Appeals for the Sixth Circuit found that plaintiff was entitled to "health benefits which he would have received in the eleven months after his discharge" on the basis of the record which showed that "he would have received $715 in health insurance if Sun had not illegally discharged him." 696 F.2d 1176, 1185–86 (6th Cir. 1983). In *Sun Electric,* however, the Court did not face the precise question of whether the cost of premiums which an employer would have paid but for an unlawful discharge is to be included in the back-pay award. The question on appeal was whether a jury award of $50,000 in a case of wilful discharge was supported by the record. The Court not only found the award unsupported but went on to identify the types and amounts of damages to which the plaintiff was entitled.

We note first that the $715 in "health benefits" was not included in the back-pay award but was rather described as an equitable remedy. Second, it is impossible to discern from the opinion precisely what is meant by the terms "health benefits" and "health insurance," both of which are used to describe the $715. Finally, we note that at least two circuits have held that including health insurance benefits in the award is discretionary with the trial court. *Syvock v. Milwaukee Boiler Manufacturing Co.,* 665 F.2d 149, 161 (7th Cir.1981); *Merri-*

*weather v. Hercules, Inc.,* 631 F.2d 1161, 1168 (5th Cir.1980) (Title VII).

For all these reasons, we decline to view *Sun Electric* as requiring the inclusion in the back-pay award of the amount defendant would have paid for insurance premiums on behalf of the plaintiff. We reiterate that the make-whole nature of the ADEA requires the Court to fashion that remedy which will, to the degree possible, put the plaintiff in the position he would have been in had there been no discrimination. We conclude that to include the amount of the insurance premiums in the back-pay award would make plaintiffs more than whole. The premiums would have been paid to the carriers, not to the plaintiffs. And although insurance coverage is a benefit, the value of that benefit is speculative until an insured incurs covered expenses. Although the Court has equitable and legal power to fashion a remedy, it does not have the power to award speculative damages. *Kolb v. Goldring,* 694 F.2d 869, 872 (1st Cir.1982), quoting *Jamison Co. v. Westvaco Corp.,* 526 F.2d 922, 936 (5th Cir. 1976).

Plaintiffs can recover for medical expenses incurred since their discharge which would have been covered. They may also recover the amount they expended in purchasing replacement insurance. *Syvock v. Milwaukee Boiler Manufacturing Co.,* 665 F.2d at 161; *EEOC v. Kallir, Ross, Inc.,* 420 F.Supp. 919, 924 (S.D.N.Y.1976), *aff'd* 559 F.2d 1203 (2d Cir.1977).

Plaintiff Cain offered as an exhibit a back-pay computation indicating that he spent $2,154.88 in 1982 and $1,117.02 in 1983 to purchase health insurance for himself and his family (doc. 81, ex. F). Defendant does not challenge these figures (doc. 86, ex. F). Plaintiffs Merkel and Hughes presented similar back-pay computations (doc. 81, exs. D, E) but these computations do not indicate whether or not these plaintiffs purchased replacement insurance. None of the plaintiffs presented evidence as to the amount of any medical expenses they incurred which would have been covered by insurance provided by defendant had they not been discharged. Accordingly, we find that $3,271.90 should be included in the back-pay award to plaintiff Cain for the cost of insurance premiums incurred in 1982 and 1983. We further find that the back-pay awards for plaintiffs Merkel and Hughes should not include any amount for fringe benefits.

### D. Deductions from Back-Pay

Plaintiffs assert that unemployment compensation received by them and any interim earnings should not be deducted from their back-pay awards. With respect to the interim earnings, plaintiffs rely upon the ADEA's purpose of eradicating age discrimination and with respect to unemployment compensation they rely on the collateral source rule. Defendant responds that both of these amounts should be deducted to avoid double recovery.

Unemployment compensation and interim earnings can be distinguished on the ground that the former are paid by a state for public policies distinct from those underlying the ADEA. Separate discussions are thus appropriate.

The Sixth Circuit has not addressed the specific question of whether unemployment compensation should be deducted from back-pay awards in the context of the ADEA. It has, however, recently considered the treatment of unemployment compensation in the context of the Federal Mine, Health and Safety Act of 1977, 30 U.S.C. § 815. *Boich v. Federal Mine Safety and Health Review Commission, et al.,* 704 F.2d 275, 286–87 (6th Cir.1983). In that case the ALJ refused to deduct unemployment compensation.

The Court of Appeals noted that the Seventh Circuit in an ADEA action and the Tenth Circuit in a Title VII action held that the trial court had the discretion to deduct unemployment compensation from back-pay awards. *Syvock v. Milwaukee Boiler Manufacturing Co., Inc.,* 665 F.2d 149 (7th Cir. 1981); *EEOC v. Sandia Corp.,* 639 F.2d 600 (10th Cir.1980). The Court also cited three of its own cases, all Title VII, for the proposition that back-pay awards were within the

discretion of the trial judge. *Satty v. Nashville Gas Co.,* 522 F.2d 850 (6th Cir.1975); *Meadows v. Ford Motor Co.,* 510 F.2d 939 (6th Cir.1975); *Head v. Timken Roller Bearing Co.,* 486 F.2d 870 (6th Cir.1973).

In *Satty,* the Court found no abuse of discretion where the trial judge deducted interim wages and unemployment receipts from a back-pay award. 522 F.2d at 855. The trial courts in the other two cases had not ordered *any* back-pay awards. The Court of Appeals reversed in both cases, stating that although the District Court has the discretion not to order a back-pay award, Title VII mandates a back-pay award in the absence of exceptional circumstances. *Meadows,* 520 F.2d at 941–48; *Head,* 486 F.2d at 876–77.

The NLRA model for back-pay has been adopted for Title VII cases. *Boich v. Federal Mine Safety & Health Review Commission,* 704 F.2d at 286 n. 15. In *Boich,* the Court adopted the NLRA model for Mine, Safety and Health Act cases. Under *Boich,* the trial judge must order a back-pay award in the absence of exceptional circumstances in cases arising under the Mine Act, Title VII, and the NLRA, but the court has considerably more discretion in deciding whether to deduct unemployment compensation from those awards.

The NLRA model has not, however, been expressly adopted for ADEA cases. However, those courts of appeal that have considered the issue of whether unemployment compensation and interim earnings shall be deducted from a back pay award have concluded that the trial court has the discretion to decide how to treat those items. *Syvock v. Milwaukee Boiler,* 665 F.2d 149, 162 (7th Cir.1981); *Naton v. Bank of California,* 649 F.2d 691, 699–700 (9th Cir.1981); *EEOC v. Sandia Corp.,* 639 F.2d 600, 624–28 (10th Cir.1980); *Marshall v. Goodyear Tire & Rubber Co.,* 554 F.2d 730, 736 (5th Cir.1977). *Boich* indicates that the Sixth Circuit is likely to adopt this same approach.

We digress briefly to state that although the developing law appears to be that district courts have the discretion to decide how to treat unemployment compensation, we question if that is the most effective approach in ADEA actions. Whether such compensation should be deducted from a back-pay award is a policy question that should not be decided on the particular facts of a given case. A review of the cases, in fact, reveals that district courts typically have based their decisions about the treatment of unemployment compensation on policy grounds and their views of how best to effectuate the purposes of the ADEA rather than on the particular facts of the case. This treatment sharply contrasts with the treatment of reinstatement. The question of reinstatements is inevitably tied to particularized facts and thus an ideal subject for discretionary treatment by the trial court.

Having reviewed how other district courts treat unemployment compensation as well as the policies underlying the ADEA, the ADEA's statutory scheme of damages, and basic principles of remedies, we conclude that unemployment compensation should be deducted from back-pay awards to ADEA plaintiffs.

Using the collateral source rule, a number of district courts have held that unemployment compensation should not be deducted, reasoning that this form of compensation is provided by the government for policy reasons unrelated to employment discrimination. *See EEOC v. Sandia Corp.,* 639 F.2d at 624–26 and cases cited therein. These courts typically rely on *NLRB v. Gullet,* 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951), in which the Supreme Court held that the Board did not abuse its discretion when it declined to deduct state unemployment compensation payments from back pay awards. The Court reasoned:

> To decline to deduct state unemployment compensation benefits in computing backpay is not to make the employees more than whole, .... Since no consideration has been given or should be given to *collateral losses* in framing an order to reimburse employees for those lost earnings, manifestly no consideration need be given to collateral benefits which employ-

ees may have received. *Id.* at 364, 71 S.Ct. at 339 (emphasis original)

This much quoted language, although it provides a rationale for not deducting unemployment compensation, does not hold that unemployment compensation should never be deducted from a back pay award. Instead the Court left set-off of such payments to the discretion of the Board.

The *Gullet* reasoning, in brief, is that unless a plaintiff's collateral losses are included in an award of damages, any collateral benefits that he has received should not be subtracted from that award. This reasoning might well apply in Title VII cases as the NLRA model has been adopted for those cases. We find it inappropriate, however, in the context of the ADEA.

▬ The relief available under the ADEA is different from that available under Title VII. *See generally,* 2 A. Larson and L. Larson, *Employment Discrimination: Procedures and Remedies,* § 55.40 (1983). The ADEA provides for liquidated damages in an amount equal to the back pay award where the discrimination is wilful. Liquidated damages are not available under Title VII. Liquidated damages under the ADEA are to compensate the victim of wilful discrimination for those losses not easily calculated in terms of back pay and lost fringe benefits. *See, e.g., Pfeiffer v. Essex Wire Corp.,* 682 F.2d 684, 687 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 453, 74 L.Ed.2d 606 (1982), quoting the 1978 report of the Congressional Conference Committee considering amendments to the ADEA. The liquidated damages provision of the ADEA thus allows plaintiffs who have been the victims of wilful discrimination to recover for obscure losses. We believe this means that ADEA plaintiffs are entitled to recover collateral losses unlike Title VII plaintiffs. We conclude that the collateral source rule is inapplicable in the ADEA context.

▬ Furthermore, we agree with the Ninth Circuit that the application of the collateral source rule is not necessary in most cases to effectuate the purposes of the ADEA. *Naton v. Bank of California,* 649

F.2d at 700. Plaintiffs can be put in the economic position they would have been in had the discrimination not occurred even if unemployment compensation is deducted. Moreover, we doubt that not deducting such compensation will add significantly to the deterrent effect of the ADEA.

Other courts have deducted unemployment compensation for back pay awards to ADEA plaintiffs on the theory that deduction is necessary to prevent double recovery. *See, EEOC v. Sandia Corp.,* 639 F.2d at 625 and cases cited therein. We conclude that this is the better approach. Although the ADEA's primary purpose is eradicating age discrimination, when discrimination occurs, its secondary purpose is to make plaintiffs whole. If unemployment compensation is not deducted from a back pay award, a plaintiff will be put in a better economic position than he would have been in absent the discrimination.

We are aware of the argument that deducting unemployment compensation from a back pay award confers a windfall on an ADEA defendant, but do not find it sufficiently persuasive grounds for making a plaintiff more than whole by not deducting such compensation. It is not the business of the Court to punish an ADEA defendant. Liquidated damages are available where a jury finds that an employer has wilfully discriminated. Finally, had Congress intended that in egregious cases a plaintiff could have been made more than whole, it would have made punitive damages available under the ADEA.

Accordingly, we hold that unemployment compensation received by an ADEA plaintiff must be deducted from a back pay award.

▬ The parties stipulated to the amount of unemployment compensation received by each plaintiff. (doc. 81, p. 13; doc. 86, exs. D, E, F). Accordingly, these amounts will be deducted from the back pay awards.

With respect to *interim earnings,* plaintiffs assert that the Court should exercise its discretion and decline to deduct such

earnings from the back pay awards to prevent defendant from benefitting from its unlawful acts. They note that Title VII requires the Court to reduce an award of back pay in the amount of "interim earnings or amounts earnable with reasonable diligence," 42 U.S.C. § 2000e–5(g), but that the ADEA contains no comparable provision. Plaintiffs conclude that this omission evidences Congress' intent that courts fashion back-pay awards to serve as deterrents to improper conduct, thereby effecting the ADEA's primary purpose of eradicating age discrimination.

The only court of appeals which has addressed the specific question of interim earnings in the context of the ADEA ruled that district courts must deduct interim earnings from back pay awards to prevent double recovery. *Rodriguez v. Taylor,* 569 F.2d 1231, 1242–43 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). The Court stated:

> [T]he absence of express set-off language in the ADEA enforcement provisions does not compel the inference that Congress intended to preclude set offs. The make-whole relief objective is common to both Title VII and ADEA and will be effectuated only if back-pay awards are reduced to reflect alternate source earnings. *Id.* at 1243.

We agree. In addition, we note that our own Court of Appeals has held that deducting severance pay from a back pay award is proper where the severance pay "is an amount [the plaintiff] would not have received but for the termination." *Laugesen v. Anaconda Company,* 510 F.2d 307, 317 (6th Cir.1975). Interim earnings are similarly amounts that a plaintiff would not have received had he not been terminated. *See also* the treatment of a stock bonus plan in *Cline v. Roadway Express, Inc.,* 689 F.2d 481, 490 (4th Cir.1982).

Finally, plaintiffs assert that the Supreme Court's statement in *Ford Motor Co. v. EEOC,* 458 U.S. 219, 231, 102 S.Ct. 3057, 3065, 73 L.Ed.2d 721, 732 (1982) that a Title VII plaintiff has no obligation to "go into another line of work, accept a demotion, or take a demeaning position," prevents the District Court from deducting interim earnings. The Supreme Court, however, in a footnote pointed out that if a Title VII plaintiff did take a non-comparable job, Title VII requires the deduction of interim earnings. *Id.* 102 S.Ct. 3066 at n. 16.

We conclude that the ADEA's primary purpose of eradicating age discrimination does not require us to ignore interim earnings. ADEA plaintiffs are properly compensated, that is, made whole, where interim earnings are deducted from back-pay awards. Eradicating discrimination is well served by the ADEA's liquidated damages provision providing for recovery of an additional amount equal to the back pay award where the discrimination is wilful. Although we recognize that deducting interim earnings may constitute a benefit to defendant, not deducting them makes plaintiffs more than whole. For reasons stated in our discussion of unemployment compensation, we can find no justification for making an ADEA plaintiff more than whole.

We hold therefore that interim earnings should be deducted from a back-pay award to an ADEA plaintiff. Plaintiff Merkel had no interim earnings. With respect to plaintiffs Cain and Hughes, the parties stipulated to the amount of their interim earnings (doc. 86, exs, E, F); these amounts will be deducted.

### III. *Liquidated Damages*

██ The jury found that defendant's discharge of each of the three plaintiffs was wilful. Accordingly, each of the three plaintiffs is entitled to an award of liquidated damages equal to the amount of the back pay award. 29 U.S.C. § 626(b); *Hill v. Spiegel, Inc.,* 708 F.2d 233 (6th Cir.1983).

### IV. *Damages Under Pendent State Claims*

██ Compensatory damages are available under Ohio's Revised Code § 4101.17(B) which provides that the Court shall order "an appropriate remedy" in cases of unlawful age discrimination and under the common law of Ohio. *Merkel v. Scovill,* C–1–89–149, C–1–82–150, C–1–82–151 (S.D.Ohio,

Jan. 27, 1983). The jury found that plaintiffs Hughes and Merkel were entitled to compensatory damages on their state claims and awarded such damages in the amount of $250,000 to plaintiff Hughes and $150,000 to plaintiff Merkel.

Compensatory damages under Ohio law include damages for pain and suffering, loss of reputation, humiliation and embarrassment. Liquidated damages under the ADEA are permitted to enable plaintiffs who have been the victims of wilful discrimination to recover damages for non-pecuniary losses that are difficult to prove. Report of Congressional Conference Committee, [1978] U.S.Code Cong. & Admin. News 528, 535. At least seven courts of appeal, including our own, have held that ADEA liquidated damages are in lieu of damages for loss of reputation, humiliation, mental anguish and other such losses. *Hill v. Spiegel,* 708 F.2d at 235 and cases cited therein.

Accordingly we find that to prevent double recovery for such damages, the awards for compensatory damages on the state claims must be reduced by the amount of the liquidated damages awarded under the ADEA.

### V. *Attorney's Fees and Costs*

Finally, each plaintiff has made an application for attorneys' fees and costs. As we perceive that it will be more efficient to resolve the questions on attorneys' fees and costs after all post-trial motions have been decided, we reserve our ruling.

### VI. *Conclusion*

The Judgments which accompany this Opinion and Order incorporate the rationales set forth above and are based upon stipulations provided by the parties. It may be necessary to make slight adjustments to these awards as we were not provided with the total amount of unemployment compensation and/or interim earnings received to date by the plaintiffs. The parties may make those adjustments by providing the Court with appropriate stipu-

lations and an agreed-upon supplement to the judgments for the Court's approval.

SO ORDERED.