Robert MERKEL, Jacob M. Hughes, and Michael Cain, Plaintiffs,

v.

SCOVILL, INC., Defendant.

Nos. C–1–82–149 to C–1–82–151.

United States District Court,
S.D. Ohio, W.D.

June 6, 1984.

**530**

James B. Helmer, Jr., Ann Lugbill, William E. Clements, Cincinnati, Ohio, for plaintiffs.

Charles Weiner, Cincinnati, Ohio, for defendant; Stanford G. Wilson, Robert Thompson, Atlanta, Ga., of counsel.

## OPINION AND ORDER AWARDING ATTORNEYS' FEES

SPIEGEL, District Judge:

■ This matter came on for hearing on plaintiffs' application for attorneys' fees (doc. 80), defendant's memorandum in opposition (doc. 84) and plaintiffs' reply (doc. 89); and plaintiffs' supplemental application for fees (doc. 130), defendant's memorandum in opposition (doc. 137) and plaintiffs' reply (doc. 140). Also before the Court are defendant's supplemental memorandum (doc. 141) as leave to file that memorandum was granted in open court, and plaintiffs' response (doc. 143).[1] For rea-

---

1. Defendant also filed a motion to convene an evidentiary hearing and/or for leave to conduct discovery and to permit the introduction of evidence regarding plaintiffs' request for attorneys' fees (doc. 85) which was opposed by plaintiffs (doc. 87). As the discussion above will make clear, defendant's motion has been rendered moot and accordingly is denied.

sons that follow, we find that plaintiffs are entitled to an award of attorneys' fees in the amount of $125,896.02 and total costs of $5,399.65. The attorneys' fee award is based upon our conclusion that 1,310.25 hours is the amount of time reasonably expended in this litigation and that the hourly rates of from $65 to $100 an hour sought by plaintiffs are reasonable fees, and indeed may be somewhat less than the prevailing market rate in this community for civil rights attorneys with comparable qualifications. We further conclude that multiplying these hours times the rates stated results in an unreasonably low fee and accordingly have used an upwards adjustment factor of 25% in reaching the total fee award. We hold that an award of $125,896.02 is a reasonable attorneys' fee for the work done in these three consolidated cases as that term has been construed by the United States Court in *Blum v. Stenson*, — U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), and *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

## I.

Each of the plaintiffs in these three consolidated cases brought suit under the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* All three had pendent state claims. By the time of trial five claims remained. Plaintiffs Cain and Hughes had federal claims for discharge based upon age. Plaintiff Merkel had an ADEA claim for retaliatory discharge. In addition, Hughes had a claim for age discrimination pursuant to Ohio Rev.Code § 4101.17. Merkel had a state common-law claim for unlawful discharge on the theory that his discharge was based upon his refusal to commit perjury. On May 6, 1983 the jury returned a verdict for plaintiffs on all claims. In addition, with respect to the ADEA claims, the jury found that defendant acted willfully in discharging the plaintiffs. *See Merkel v. Scovill, Inc.*, 570 F.Supp. 133 (S.D.Ohio 1983), *app. pending*; 570 F.Supp. 141 (S.D. Ohio 1983), *app. pending.*

On July 28, 1983, pursuant to a pretrial agreement by the parties, and following extensive post-trial briefing, the Court entered general verdicts consistent with special interrogatories answered by the jury (doc. 91). The Court ordered reinstatement of all three plaintiffs. We also ordered that the seniority status of each plaintiff and all rights related to that status be restored. 570 F.Supp. 143–44. In calculating the backpay awards, we declined to include the amount defendant would have paid for insurance premiums on behalf of the plaintiffs but did include medical expenses incurred by plaintiffs that would have been covered but for the discharges. 570 F.Supp. 145–46. In addition, we deducted the amount of unemployment compensation and interim earnings received by each plaintiff. 570 F.Supp. 146–49. Because the jury had concluded that the defendant's discharge of each of the plaintiffs was willful, each plaintiff was awarded liquidated damages in an amount equal to his backpay award. 570 F.Supp. 149.

On November 2, 1983 the Court entered its decision denying defendant's motion for judgment notwithstanding the verdict and/or new trial as to all plaintiffs' ADEA claims (doc. 116). However, the motion for a judgment NOV as to plaintiff Merkel's state claim was granted because we found that the evidence was insufficient to permit the jury to conclude that Merkel was discharged because he refused to commit perjury. In addition, the Court ordered a remittitur of $125,000 as to plaintiff Hughes' state claim, a remittitur that was accepted by plaintiff. The parties subsequently submitted revised judgments based upon the Court's opinions and orders that took into consideration the additional lapse of time. These judgments were adopted in their entirety by the Court November 29, 1983 (docs. 118, 119, 120, 121; doc. 36, C–1–82–150; doc. 35, C–1–82–151).

In sum then, the relief ordered included reinstatement of all three plaintiffs, an award of backpay from the date of discharge to the date of reinstatement for all three, liquidated damages in the amounts

of the backpay awards for all three and, in the case of plaintiff Hughes, an award of compensatory damages pursuant to his state claim in the amount of $125,000. The monetary judgments total approximately $260,000, exclusive of the value of reinstatement.

## II.

Plaintiffs' initial application seeks attorneys' fees for the period between the filing of the action and the date of the jury verdict. The supplemental application covers the period from May 20, 1983 through December 30, 1983. Plaintiffs seek compensation for 1,391.05 hours of work by six attorneys whose normal hourly rate is stated as from $65 to $100 an hour and by one law clerk whose hourly rate is stated as $35. After calculating the fees that would be charged for each attorney's work, plaintiffs reduced the amounts by 5% to eliminate any duplication inadvertently overlooked. The resulting figure is $106,930.16, the lodestar amount, which represents a blended hourly rate of $76.87. Plaintiffs request that this lodestar amount be adjusted upwards 100% to compensate for exceptional success, the quality of services rendered, and the contingent nature of the litigation. Plaintiffs thus arrive at a total fee award of $213,860.32, which represents a blended hourly rate of $153.74. *See* plaintiffs' exh. 1, doc. 140. Plaintiffs also seek total costs of $5,399.65.

Defendant acknowledges that the hourly rates used by plaintiffs are reasonable. Defendant also states that the hours claimed by plaintiffs are reasonable with two exceptions. Defendant argues that all hours spent on Merkel's state claim for wrongful discharge should be eliminated as time spent on an unsuccessful claim and that all time spent on plaintiffs' motion to amend the judgment (doc. 101) should be subtracted as duplicative. Defendant acknowledges that plaintiffs' 5% reduction adequately compensates for any other du-

plication. Defendant's primary objection to plaintiffs' application is that plaintiffs are not entitled to any upward adjustment of the award. Defendant calculates that plaintiffs are thus entitled to a fee award of $85,791.55. It does not challenge the application for costs.

## III.

Plaintiffs seek fees pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act of 1938 which provides that the Court shall award "a reasonable attorney's fee" to prevailing plaintiffs and which has been incorporated in the ADEA. 29 U.S.C. § 626(b).[2] The district court has considerable discretion in calculating attorney fee awards. Nevertheless, that discretion must be exercised within the guidelines enunciated in recent Supreme Court and Sixth Circuit decisions. *Blum v. Stenson,* — U.S. —, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Louisville Black Police Officers Organization, Inc. v. Louisville,* 700 F.2d 268 (6th Cir.1983); *Northcross v. Board of Education,* 611 F.2d 624 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). Although these four cases deal with awards of attorney fees pursuant to the Civil Rights Attorney's Fee Awards Act, 42 U.S.C. § 1988, the standards governing § 1988 awards are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'." *Hensley,* 461 U.S. at — n. 7, 103 S.Ct. at 1939 n. 7.

To calculate a reasonable attorney's fee the Court must begin by multiplying the hours reasonably expended on the litigation times a reasonable hourly rate. Adjustments may then be made as necessary to render the fee reasonable. *Blum,* — U.S. at —, 104 S.Ct. at 1543–44.

---

**2.** O.R.C. § 4101.17(b) also provides for an award of "reasonable attorney fees" to plaintiffs

who prevail on a claim of age discrimination.

## IV.

■ With respect to the hours reasonably expended, the applicant must not only document those hours but also exercise billing judgment by eliminating all hours that would not be appropriate if billed to a fee paying client. *Hensley,* 461 U.S. at ——, 103 S.Ct. at 1939. Our review of the time slips submitted by plaintiffs (exh. 1, doc. 80; exh. 4, doc. 130), and of the affidavit of trial counsel James B. Helmer (exh. A, doc. 80) persuades us that plaintiffs' counsel did exercise billing judgment. Moreover, defendant does not challenge the time records of plaintiffs' counsel with two exceptions, both of which will be discussed below. Furthermore, the parties agree that a 5% reduction will eliminate any duplication that might have been overlooked. Accordingly, we accept the hours of plaintiffs as stated.

Defendant's first challenge is to the hours spent on Merkel's common-law state claim. The Supreme Court has held that no fee may be awarded for unsuccessful and unrelated claims. *Hensley,* 461 U.S. at ——, 103 S.Ct. at 1940. It is undisputed that Merkel was unsuccessful on the state law claim as we granted defendant's motion for a judgment NOV on that claim. The question, therefore, is whether the state law claim was unrelated to the ADEA claim on which Merkel prevailed.

Defendant argues that *Hensley* requires that all time expended on Merkel's state law claim be deducted. Because that claim was one of five presented to the jury, defendant concludes that the Court could reduce the hours spent by 20%. Defendant, however, states that a 15% reduction, *i.e.,*

eliminating approximately 208 hours, would be equitable.[3]

The test under *Hensley,* however, is whether the unsuccessful claim is related to the successful claim. The evidence offered by Merkel in support of his ADEA claim for retaliatory discharge was identical to that presented in support of his state claim for wrongful discharge. Indeed, he could not have prevailed on his ADEA claim without having presented the evidence supporting his wrongful discharge claim. The judgment NOV was granted because he did not present enough additional evidence to prove that he had been discharged because he refused to commit perjury. Accordingly, we conclude that the claims were related insofar as preparation and presentation of evidence is concerned.

However, we find that the wrongful discharge claim is unrelated to Merkel's ADEA claim for other purposes. The legal arguments that lead to this Court's finding that Ohio courts would recognize a cause of action for wrongful discharge and the preparation of jury charges on this issue are unrelated to issues under the ADEA. We conclude that the hours spent researching and briefing the wrongful discharge claim should be eliminated.

Defendant reviewed plaintiffs' counsel's time sheets and identified 80.8 hours devoted, at least in part, to the wrongful discharge claim.[4] (exh. 1, doc. 137). Plaintiffs' lead counsel, James Helmer, testified that 80 hours was a fair estimate of the time spent researching and briefing the wrongful discharge issue and preparing appropriate jury instructions. Accordingly,

---

**3.** To bolster its argument defendant also points out that there is no state or federal statutory authority for awarding fees for a common-law wrongful discharge claim even had Merkel prevailed on the claim. Although we do not decide this issue, we believe that *Hensley* would permit an award of attorneys' fees reasonably expended on a pendent state claim even if plaintiff did not prevail on that claim so long as the claim was related to the successful federal claim.

**4.** Defendant suggests that not all the time spent on this issue is identified, pointing out that the

time sheets indicate almost no time on researching and writing that part of the opposition to defendant's motion for a jnov devoted to wrongful discharge, or on drafting jury instructions or special verdict forms. Defendant stresses that it does not challenge the integrity of plaintiffs' counsel's time sheets but instead is merely pointing out that the time sheets are not detailed enough to reflect all time spent on the wrongful discharge issue. *See* doc. 137 at 7–8 and n. 3–4.

we shall subtract 80.8 hours from the total hours claimed by plaintiffs.

We shall use the following method in apportioning the 80.8 hours as plaintiffs' counsel's time sheets do not reflect the time spent on the wrongful discharge issue with sufficient particularity to permit us to determine how these 80.8 hours should be distributed (exh. 1, doc. 80; exh. 4, doc. 130). If we total the time for all entries referring to wrongful discharge, we risk skewing the results. We conclude that a more equitable approach is to apportion the hours among the three attorneys who are identified on the time sheets as having worked on the wrongful discharge issue. The hours shall be apportioned according to the ratio of the individual attorney's hours to the aggregate of the total hours expended by those three attorneys (Mr. Helmer, Ms. Kindell, Ms. Lugbill).

Defendant also asserts that hours spent on plaintiffs' supplemental memorandum (doc. 115) in support of their motion to amend the judgments (doc. 101) should be eliminated as redundant. Plaintiffs sought reconsideration of previous rulings that insurance premiums should not be included in backpay awards and that such awards should be reduced by the amount of any unemployment compensation and interim earnings received. Defendant points out that these issues had been extensively briefed earlier and ruled on. They also note that plaintiffs were unsuccessful in their attempts to persuade the Court to modify these earlier rulings.

Our own review of the documents to which defendant refers persuades us that time spent on plaintiffs' motion was not redundant. Subsequent to our first rulings on these issues, the Sixth Circuit held that unemployment compensation should not be deducted from backpay awards in Title VII cases. *Rasimas v. Michigan Department of Mental Health*, 714 F.2d 614 (6th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). Although we concluded that *Rasimas* did not require a different result in the instant cases, we nonetheless find that requesting reconsid-

eration in light of *Rasimas* represents no more or less than the zealous representation an attorney owes his client. Accordingly, we conclude that no hours should be deducted for time expended on this issue.

In short, we find that the 1,391.05 hours stated by plaintiffs is adequately documented and is a reasonable expenditure of time given the novelty and complexity of the legal and factual issues raised. The hours claimed by plaintiffs, however, shall be reduced by the 80.8 hours calculated by defendant and accepted by plaintiffs as representing an equitable estimate of the time spent researching and briefing the legal issues pertinent to Merkel's unsuccessful state claim. No reduction shall be made for time spent briefing the motion for reconsideration. We hold, therefore, that 1,310.25 is the number of hours reasonably expended by plaintiffs' counsel in this litigation.

## V.

■ In determining what is an appropriate hourly rate, the Court must establish what is the prevailing market rate in the relevant community. The burden is on the fee applicant to establish by competent evidence in addition to the attorney's own affidavits that the rates requested are comparable to those charged in the community for similar services by attorneys with comparable skill, experience and education. *Blum*, —— U.S. at —— and n. 11, 104 S.Ct. at 1547 and n. 11.

Plaintiffs' application is based upon hourly rates of from $65 to $100 for the attorneys involved in this litigation and $35 for one law clerk. Qualifications of plaintiffs' counsel are described in the Helmer affidavit (exh. A, doc. 80) and are not challenged by defendant. Plaintiffs also submitted affidavits by Senator Stanley J. Aronoff, a state senator who has practiced law in Cincinnati, Ohio since 1957 (exh. B, doc. 80), and by Robert J. Hollingsworth, a specialist in litigation and employment law, who has practiced law in Cincinnati since 1975 (exh. 2, doc. 140). Mr. Aronoff stated in his affidavit that the rate schedule present-

ed by plaintiff's counsel is "probably under that frequently charged by comparable counsel." Both Mr. Aronoff and Mr. Hollingsworth testified that the fees sought by plaintiffs' counsel are reasonable and comparable with rates for non-contingent fee work in the Cincinnati area.

Our review of the rate schedule persuades us that the hourly rates sought by plaintiffs for each of the attorneys and the law clerk involved in this litigation are comparable to, and perhaps somewhat lower than, what would be charged in the Cincinnati legal community for attorneys with comparable experience, skill and education. The rate schedule is not dissimilar to ones that this Court has established in other litigation. *See Doe v. Burwell*, C-1-81-415 (S.D.Ohio Aug. 24, 1982) ($40-$90 in a class action challenging the confinement of juveniles that settled prior to trial awarded pursuant to 42 U.S.C. § 1988); *National Trust v. U.S. Corp of Engineers*, 570 F.Supp. 465 (S.D.Ohio 1983) ($65-$90 in an action pursuant to the National Historic Preservation Act, 16 U.S.C. § 470f, resolved on a motion for summary judgment). In addition, we emphasize that defendant does not challenge the appropriateness of the rate schedule posed by plaintiffs.

Accordingly, we conclude that the rate schedule proposed by plaintiffs is appropriate. Therefore, we shall use the following hourly rates in calculating the fee award: James Helmer, $100; Ann Lugbill, $65; Michael Kohn, $100; Patricia Kindel, $75; Sallie Conley Lux, $65; Peter Unger (a law clerk), $35; William Clements, $75.00.

## VI.

The final issue before the Court, and the one most strenuously contested, is the appropriateness of an upward adjustment. Plaintiffs seek a 100% upwards adjustment. Defendant argues that the Supreme Court's *Blum* decision severely limits the situations in which such an upward adjustment should be made, and that an upwards adjustment here would not be appropriate.

 The Supreme Court clearly intended in *Blum* to limit upward adjustments to those rare cases in which multiplying the reasonably hourly rate times the hours reasonably expended does not result in a reasonable fee. The presumption is that the product resulting from the claimed rate and number of hours is reasonable. The burden of proving that the product is not reasonable and that an upward adjustment is appropriate is on the fee applicant. *Blum*, —— U.S. at ——, 104 S.Ct. at 1548. Upward adjustments, however, may not be based upon the complexity of the litigation or the novelty of the issues presented, as those factors should be reflected in either the hours expended or the hourly rates requested. *Blum*, 104 S.Ct. at 1548. Upward adjustments are similarly inappropriate if based upon the quality of representation as that factor normally will be reflected in the rate schedule. However, *Blum* does permit an upward adjustment "in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged *and* that the success was 'exceptional'." *Blum*, —— U.S. at ——, 104 S.Ct. at 1549, citing *Hensley* (emphasis added). In addition, the results obtained do not normally provide an independent basis for increasing the fee award. *Blum*, 104 S.Ct. at 1549.

 The Supreme Court specifically left open the issue of whether the risk of not being a prevailing party and thus not entitled to an award of attorney's fees would ever justify an upward adjustment. *Blum*, —— U.S. at ——, n. 17, 104 S.Ct. at 1550, n. 17. The Sixth Circuit, however, has approved an upward adjustment where there was a significant risk of not prevailing. *Louisville Black Police Officers Organization*, 700 F.2d 268 at 280, quoting *Northcross*, 611 F.2d at 641. Accordingly, we conclude that the risk of not prevailing is a factor that can be considered in deciding whether to adjust a fee award upwards.

In the instant case, we find that a 25% upwards adjustment is necessary to render the award reasonable. Plaintiffs have

demonstrated with specific evidence (1) that multiplying the hours expended times the reasonable hourly rates does not result in a reasonable fee; and (2) that the quality of service rendered was superior and the success exceptional.

Our first task is to determine whether plaintiffs proved that an unenhanced fee, *i.e.,* one based solely on hours and rates, is unreasonable. If we find the unenhanced fee is unreasonable, we must determine whether plaintiffs presented specific evidence justifying an upwards adjustment and the amount of that adjustment. In other words we must determine what is a reasonable fee.

Plaintiffs presented substantial evidence of the risk assumed when this litigation was initiated. Not only were the legal issues arising out of plaintiffs' state claims novel but the factual issues were vigorously disputed as a review of the transcript of the trial demonstrates. Mr. Aronoff testified that his own office would not have undertaken the litigation because of the risk involved and the burden it would have placed on his staff. Mr. Helmer testified at length as to the effect of the litigation on his own small firm.

We conclude that the risk factor alone demonstrates the unreasonableness of an unenhanced fee. Our conclusion is supported by the purposes of statutory attorney's fee provisions: to ensure "effective access to the judicial process," H.Rep. No. 94–1558, p. 1 (1976), and "to attract competent counsel", S.Rep. No. 94–1011, p. 6 (1976) U.S.Code Cong. & Admin.News 1976, p. 5908, 5913 (discussing § 1988, the Civil Rights Attorney's Fee Awards Act). Attorneys enter into contingent fee arrangements in other high-risk cases knowing that the fees from one case may offset the loss of fees in another. Statutory awards in civil rights cases should take similar realities into account. Otherwise,

competent counsel, especially solo practicioners or those associated with a small firm, may find it impossible to undertake a civil rights case in which the risk of not prevailing is significant. In other words, proof that counsel assumed a significant risk of not prevailing in undertaking particular litigation can support a finding that an unenhanced award is reasonable.

In the instant cases, the evidence of significant risk demonstrates the unreasonableness of an unenhanced fee. That evidence would also support an upward adjustment. However, we find it unnecessary to base the adjustment upon that risk factor, as we find that the plaintiffs have presented specific evidence of superior service and exceptional success justifying an upwards adjustment of 25% under *Blum*, —— U.S. at ——, 104 S.Ct. at 1548.[5]

The evidence with respect to the superior service rendered by plaintiffs' counsel appears in the record. A review of the motions and memoranda filed demonstrates that plaintiffs' counsel were not only meticulous in their research and attention to legal and factual detail but also that they developed an approach to age discrimination cases utilizing Ohio statutory and common law that had not previously been reported. Extrapolating from existing law, legislative history and public policy arguments, plaintiffs' counsel persuaded this Court of the appropriateness of allowing a plaintiff to pursue simultaneously a state law claim based on Ohio's age discrimination statute and an ADEA claim. They also persuaded us that Ohio courts would permit an award of compensatory and punitive damages under Ohio Rev.Code § 4101.-17. Finally, they persuaded us that Ohio courts would recognize a common-law cause of action for wrongful discharge based on a refusal to commit perjury. These were all questions of first impression.[6]

5. The evidence of superior service and exceptional success also proves the unreasonableness of an unenhanced award.

6. Lest it appear that plaintiffs had it all their own way, we point out that we did not agree

with their argument that O.R.C. § 4112.02(N) permits a claim for retaliatory discharge. Nor did we accept plaintiffs' arguments that the amount a defendant would have paid for insurance premiums but for an unlawful discharge

The result of plaintiffs' arguments was to expand the remedies available to those discriminated against on the basis of age. Mr. Hollingsworth, who specializes in labor law and employment discrimination cases, testified that he regards the *Merkel* decisions as landmarks. He explained that until these decisions, damage awards in age cases were limited unless the plaintiff had been unable to find new employment or was able to sustain a long period of unemployment. He also pointed out that because compensatory damages are not recoverable in an ADEA action, the most a plaintiff could recover prior to *Merkel* was twice the backpay award. That plaintiffs may now seek compensatory damages under Ohio Rev. Code § 4101.17 has greatly influenced his decisions in representing both plaintiffs and employers. Mr. Hollingsworth testified that the *Merkel* decisions give Ohio employers additional incentive to eliminate age as a factor in their employment decisions.

The ability to discover and utilize hitherto unrecognized remedies on behalf of one's clients is the hallmark of superior service. These cases have been appealed, and thus the law on the remedies available to age discrimination plaintiffs remains unsettled. Nevertheless, the intellectual and legal skills of plaintiffs' counsel in developing the arguments that persuaded this Court are undisputed. We emphasize that we do not base our conclusion that the services rendered were superior on the potential number of persons who might benefit from the *Merkel* decisions. *Blum,* —— U.S. at ——, n. 16, 104 S.Ct. at 1549, n. 16. We also emphasize that we do not hold that an enhanced award is automatically appropriate each time plaintiff's counsel persuades a court to accept a new argument. However, in the instant cases, our own familiarity with the record, with the arguments developed, and with the vigorous opposition of defendant to each of these arguments persuades us of the superior nature of the service rendered by plaintiffs' counsel.

 Superior service justifies an upwards adjustment only if coupled with exceptional success. *Blum,* —— U.S. at ——, 104 S.Ct. at 1549. Plaintiffs did not prevail on every claim, but they did ultimately prevail on four of the five claims presented to the jury. They sought reinstatement, backpay, liquidated damages, and compensatory damages. All three were reinstated, and all three received backpay awards and liquidated damages. Hughes, the only plaintiff with a state claim following our decision on defendant's NOV motion, also received compensatory damages. That Hughes accepted a remittitur of the compensatory damage award does not diminish plaintiffs' success.

Although difficult to value, reinstatement has substantial economic and psychological worth. Plaintiffs submitted an affidavit of Dr. Robert Livingston, professor of vocational rehabilitation at the University of Cincinnati, on the monetary value of reinstatement (exh. 1, doc. 143). Dr. Livingston calculated the pecuniary value of reinstatement to Merkel as $563,962; to Hughes, $210,499; and to Cain, $152,260.

Perhaps more important is the psychological value of reinstatement. Mr. Hollingsworth testified that labor attorneys describe discharge as the capital punishment of industry. The psychological effects of discharge, especially on individuals like Cain and Hughes who are in their sixties, are undisputed.

We recognize that reinstatement of employees is usually ordered where the employee is in a non-management position. *See Merkel,* 570 F.Supp. at 143–44 and cases cited therein. Nevertheless, reinstatement is not automatic and is clearly left to the discretion of the district court. 29 U.S.C. § 626(b). Defendant vigorously opposed the reinstatement of plaintiffs. Our view is that because reinstatement is an equitable remedy, the burden is upon the plaintiff to prove entitlement to reinstatement by clear and convincing evi-

should be included in backpay awards or that unemployment insurance benefits and interim

earnings should not be deducted from such awards.

dence. That all three plaintiffs did so is further evidence of their exceptional success.

## VII.

Plaintiffs seek an upward adjustment of 100% which, even after subtracting the 80.8 hours spent on the wrongful discharge claim, yields a total award of approximately $200,000. Defendant points out that this amount is more than one-third of the total monetary judgments. However, the law in this Circuit is that the amount realized from the judgments should not be considered in determining what is a reasonable fee. First, focusing on the monetary judgment might encourage attorneys to concentrate on increasing the damage awards rather than on the merits of the claims. Secondly, such a focus penalizes attorneys who prevail in cases where the pecuniary damages are slight but the civil rights implications significant. *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495 at 503 (6th Cir.1984), and cases cited therein.

Both Senator Aronoff and Mr. Hollingsworth testified that a 100% upward adjustment would result in a reasonable fee given the quality of services rendered by plaintiffs' counsel and the exceptional success realized by plaintiffs. We respect their expertise in these matters and thus their opinions. Nonetheless, we cannot in good conscience conclude that a 100% upwards adjustment is justified.

Our task is to establish a fully compensatory award. *Blum,* —— U.S. at ——, 104 S.Ct. at 1550; *Hensley,* 461 U.S. at ——, 103 S.Ct. at 1940. Given all the circumstances of these cases and all the evidence presented by plaintiffs in support of their application, we conclude that plaintiffs' counsel will be fully compensated if the fee is adjusted upwards by 25%. Such an adjustment yields a total fee award of $125,896.02. This award represents a blended hourly rate of $96.09. Given all of the facts and circumstances of this case, including the evidence offered by plaintiffs in support of their fee application, we find that this is a fair, equitable, and reasonable award.

The award has been calculated as set forth below.

| Attorney | Hours | Reasonable Hourly Rate | Fee | Fee – 5% for Duplication | +25% Adjustment | Fee Award |
|---|---|---|---|---|---|---|
| J. Helmer | 509.50 [7] | $100 | $ 50,950.00 | $ 48,402.50 | $ 12,100.63 | $ 60,503.13 |
| A. Lugbill | 559.73 [7] | 65 | 36,382.45 | 34,563.33 | 8,640.83 | 43,204.16 |
| M. Kohn | 28.95 | 100 | 2,895.00 | 2,750.25 | 687.56 | 3,437.81 |
| P. Kindel | 132.82 [7] | 75 | 9,961.50 | 9,463.42 | 2,365.86 | 11,829.28 |
| S. Lux | 3.50 | 65 | 227.40 | 216.12 | 54.03 | 270.15 |
| P. Unger | 2.00 | 35 | 70.00 | 66.50 | 16.63 | 83.13 |
| W. Clements | 73.75 | 75 | 5,531.25 | 5,254.69 | 1,313.67 | 6,568.36 |
| TOTALS | 1,310.25 | | $ 106,017.60 | $ 100,716.81 [8] | $ 25,179.21 | $ 125,896.02 [9] |
| | | | | TOTAL FEE | | $ 125,896.02 |

[7] These hours have been reduced by 80.0 hours expended on the wrongful discharge issue. The hours were calculated by taking a ratio of the individual attorney's time to the aggregate of the total hours expended by these three attorneys and applying that ratio to the 80.8 hours. The result was subtracted from the total hours claimed for each of the three attorneys. Mr. Helmer's time was reduced by 34.25 hours; Ms. Lugbill's by 37.62 hours, and Ms. Kindel's by 8.93 hours.

[8] Blended hourly rate of all attorneys' time less 5% duplication factor = $76.87 per hour.

[9] Blended hourly rate of all attorneys' time = $96.09 per hour.

## VIII.

To summarize, we find that plaintiffs presented specific evidence of the unreasonableness of an unenhanced fee and of superior service and exceptional success. We further find that a 25% upwards adjust-

ment is necessary to render the fee award reasonable. Accordingly, we order that defendant pay attorneys' fees totaling $125,-896.02, as set forth above. We further order that defendant pay total costs of $5,399.65.

SO ORDERED.